**CITIZENS BANK OF APPLETON CITY, Missouri, Appellant,**

v.

**Ruben A. and Norma J. SCHAPELER, Respondent.**

**No. WD 47194.**

Missouri Court of Appeals, Western District.

Nov. 16, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied Feb. 22, 1994.

---

Richard Anthony Koehler, Butler, Wayne Patrick Strothmann, Clinton, for appellant.

Stephen Keith Nordyke, Butler, for respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant, Citizens Bank of Appleton City, Missouri (Citizens Bank), appeals the judgment entered by the Circuit Court of Bates County, Missouri. The action below commenced by Citizens Bank seeking to recover on a promissory note executed by respondents, Ruben and Norma Schapeler, and their son, Kenneth Schapeler.

The facts relevant to this appeal are as follows: On December 15, 1981, respondents, Ruben and Norma Schapeler (the Schapelers), and their son, Kenneth Schapeler, executed a promissory note in the amount of $167,000 to be paid to the order of Citizens Bank. A deed of trust was also executed to secure the promissory note.

On February 8, 1988, Citizens Bank filed a petition on the promissory note alleging that the Schapelers had failed and refused to pay the promissory note according to its terms. While the Schapelers admitted executing the promissory note in question, they asserted the affirmative defense of fraudulent inducement to sign the promissory note as well as two counterclaims, one for fraudulent misrepresentation and the other for conversion.

The Schapelers alleged that Ted Lambert, who was the president of Citizens Bank at the time the promissory note was executed, represented to them that their execution of the promissory note and deed of trust was only for purposes of obtaining documentation for banking examiners in regard to money that Citizens Bank had already loaned to Kenneth Schapeler and for money that Citizens Bank expected and had already promised to loan to Kenneth regardless of the Schapelers' execution of the promissory note and deed of trust. Lambert further represented that Citizens Bank would make available to Kenneth necessary loans that would allow Kenneth, based upon his business and financial condition, to be in a financial position to repay his loans with Citizens Bank without the necessity of Citizens Bank requesting the Schapelers to pay the promissory note or to foreclose on the deed of trust. Based upon these representations, the Schapelers apparently believed that Citizens Bank did not expect to collect on the promissory note, but would only use it for purposes of satisfying banking examiners to substantiate its prior banking practices of lending money and promising to lend money to Kenneth.

The Schapelers also alleged that on July 19, 1984 they delivered to Citizens Bank, and specifically Ted Lambert, $80,006.41 for the purpose of paying on the promissory note in question, after Citizens Bank demanded such payment. Lambert, however, applied the money to other notes that Kenneth had with Citizens Bank, notes that the Schapelers were not obligated to pay.

A jury trial took place on September 24th and 25th of 1992. Testimony at trial revealed the following: Kenneth Schapeler testified that he had been a customer of Citizens Bank starting sometime around 1978. Over the years, he had borrowed various amounts from the bank in connection with two businesses that he operated, Schapeler Oil and Schapeler Farms. He stated that around December 15, 1981, there was some discus-

sion between him and the bank about consolidating his notes on a larger note. According to Kenneth's testimony, Ted Lambert said that the bank would need some more collateral on the notes for the bank examiners. Lambert apparently indicated that this would also give Kenneth more borrowing power to enable him to continue doing business.

Ruben Schapeler agreed to give 80 acres of land as security for the larger ($167,000) note—the note in question—and executed the note along with his wife and Kenneth. Kenneth testified that on July 19, 1984, his father signed a blank check and wrote the words "special account" on it, instructing Kenneth to apply no more than $85,000 to the note in question. This check had both Kenneth and Ruben's names on it; in other words, it was a joint account. Kenneth stated that he went to the bank and told Lambert that he wanted to apply the check for approximately $80,000 to the note in question. According to Kenneth's testimony, although Kenneth discussed his other notes at Citizens Bank on that day, he never indicated that he wanted to pay off these other notes with the check that his father gave him. Kenneth stated that he told Lambert that his father, Ruben, wanted the money applied to the note in question. It was not until December of 1984 that Kenneth found out that the money had not been applied to the $167,000 note. Apparently, the money had been applied to some of Kenneth's other notes with Citizens Bank. Kenneth eventually had to file for bankruptcy and his house was foreclosed upon.

Ron Hammelman, an experienced banker particularly in the lending area, testified to the customs and procedures that banks typically follow with regard to loans. Mr. Hammelman answered questions concerning the proper procedure to be used when a bank customer brings in funds to the bank to pay off a loan. Mr. Hammelman testified that a bank examiner would not require that additional security or notes be executed by the bank customer who already had notes outstanding at the bank.

Ted Lambert, president of Citizens Bank at the time of the incident in question, testified that the bank examiners did not request the execution of the $167,000 note. As to the check that Kenneth brought to the bank on July 19, 1984, Lambert stated that he applied the check to various loans of Kenneth's. He further testified that he did not consult Ruben before paying off Kenneth's notes with the check. He stated that when Kenneth came into the bank with the check, Kenneth told him that he had $80,000 available to pay on his notes. Lambert expected Ruben to pay his son's notes, even though Ruben's name was not on the notes.

Ruben Schapeler testified that Lambert told him that the bank examiners were requiring Kenneth to get more collateral on the notes that he had at Citizens Bank. Lambert assured Ruben that Kenneth was not in any trouble financially, but that if they signed the $167,000 note, Kenneth could get a line of credit and continue on in his business. Ruben stated that had he known that Kenneth was in any financial trouble and would be unable to repay his notes, he would never have signed the note. Ruben testified that he did not have access to Kenneth's financial information and that he relied upon what Lambert told him about Kenneth's financial condition.

Ruben stated that on July 19, 1984, he gave Kenneth a check to apply to the $167,000 note, instructing Kenneth to fill it out for no more than $85,000. This money was from the sale of property that Ruben and Norma held in their names. Upon finding out that the money had not been applied to the $167,000 note, but to five other of Kenneth's notes (one being Kenneth's wife's note), Ruben tried to contact Lambert but to no avail.

The jury found in favor of the defendants, Ruben and Norma Schapeler. As to the Schapelers' counterclaims for conversion and fraudulent misrepresentation, the jury found in favor of the Schapelers, assessing damages at $80,006.41 for each counterclaim.

On October 9, 1992, the Schapelers filed a Motion to Amend Judgment, seeking to increase the jury's award of $80,006.41 on their counterclaim for conversion to reflect interest on the award from the date of conversion. The trial court sustained this motion to allow

9% interest, and increased the award to $138,951.93.

On October 13, 1992, Citizens Bank filed a Motion for Judgment Notwithstanding the Verdict. The trial court sustained this motion with respect to the Schapelers' counterclaim for fraudulent misrepresentation. As to all other matters raised by Citizens Bank, the motion was overruled. Citizens Bank also filed a Motion for New Trial on October 13, 1992, which motion was overruled. This appeal followed.

Citizens Bank raises nine points on appeal, some of which will be considered together.

## I.

In its first point on appeal, appellant argues that the trial court plainly erred in permitting the case to proceed to trial on the Schapelers' affirmative defense of fraudulent inducement and on their two separate counterclaims for conversion and fraudulent misrepresentation. Appellant contends that the affirmative defense of fraudulent inducement to execute the promissory note is inconsistent with and opposite to the two counterclaims, as the defense of fraudulent inducement sought a rescission of the note while each of the counterclaims was based on the validity of the note. Appellant argues that the Schapelers should have been required to elect ahead of trial which of the two inconsistent theories they would pursue.

While it may appear that appellant's argument is based on the doctrine of election of inconsistent theories, a closer look at the trial transcript and appellant's argument in its brief show that appellant's argument is based on the doctrine of election of remedies. In the pretrial conference, the following colloquy occurred:

> MR. KOEHLER [attorney for Citizens Bank]: ... I do think—your Honor, I do think we're running into an election of remedies problem, because he [attorney for the Schapelers] says in his opening statement that he acknowledged the [$167,000 note]; then there can't be any

misrepresentation toward it. They acknowledge the debt. They made payment on the debt. That doesn't go hand—it can't—you can't acknowledge the debt and say that it was wrong. He's going to have to at some point in time decide which road he's going to travel on. He can't travel both at the same time. . . .

> THE COURT: I'm not sure now is the time for election of remedies.

> MR. KOEHLER: I'm not sure either.

> THE COURT: I'm not sure now is the time he's forced to elect a remedy.

> MR. KOEHLER: I understand.

Furthermore, in its brief, appellant argues that the Schapelers' affirmative defense of fraudulent inducement to sign the promissory note sought rescission of the note, while the Schapelers' counterclaims affirmed the validity of the note and sought damages. This argument focuses on the remedy and, thus, the argument is based on the doctrine of election of remedies.[1]

■ Appellant, in its brief, asks for plain error review of its first point on appeal, pursuant to Rule 84.13(c), which provides that "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." While appellant raised this issue both at the beginning of trial and in his Motion for New Trial, the point was not properly preserved. Election of remedies must be pleaded or be raised by a motion to strike or by a motion to elect at the close of all the evidence. *Steinberg v. Fleischer*, 706 S.W.2d 901, 907 (Mo.App.1986). If it is not so raised, the objection is deemed waived. *Id.* Because appellant did not raise this objection at the close of all the evidence, the point was not properly preserved and is deemed waived.

We will not review this point for plain error.

Appellant's first point is denied.

1. We also note that Citizens Bank filed a "Motion to Have the Defendants Elect Their Remedy" on October 5, 1990.

## II.

In its second point on appeal, appellant argues that the trial court erred when it overruled, ahead of trial, appellant's motion to dismiss and its motion to strike the Schapelers' affirmative defense of fraudulent inducement to sign the note. Appellant contends that the Schapelers failed to plead all of the essential elements of their affirmative defense.

The elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of its truth; (5) the speaker's intent that the representation should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988). Every essential element of fraud must be plead, and failure to plead any element renders the claim defective and subject to dismissal. *Schauer v. Gundaker Movits Real Estate Co.*, 813 S.W.2d 112, 114 (Mo.App.1991). All averments of fraud, except malice, intent, knowledge and any other condition of the mind, are to be stated with particularity. *Id.;* Rule 55.15. In other words, the fraud must clearly appear from the allegations of fact, and be independent of conclusions. *Morrison v. Jack Simpson Contractor, Inc.*, 748 S.W.2d 716, 719 (Mo. App.1988).

In paragraph 6 of the Schapelers' Fourth Amended Answer and Counterclaim, the Schapelers plead as follows:

6. In further answer to Plaintiff's petition and as a further affirmative defense, Defendants state that the Plaintiff's claim, if any is barred by fraud as the Defendants were fraudulently induced by the Plaintiff to execute said promissory note, to-wit:

(a) On or about December 15, 1981, after the Plaintiff had already loaned to Defendant's son, Kenneth Schapeler, substantial sums of money for operation of his businesses and after Plaintiff had made representations and assurances to make additional sums of money available to Kenneth Schapeler for operation of his businesses, the Plaintiff, by and through Ted Lambert, provided certain financial information and advice to Defendants, to-wit: the Plaintiff told Defendants that it would be able to provide all financing previously made and agreed to be made to Defendants' son, Kenneth Schapeler, in such amounts and upon such terms that would allow Kenneth Schapeler, based upon Kenneth Schapeler's business and financial condition and ability to be in a financial position with the ability necessary to repay and satisfy all outstanding loans with Plaintiff, but Plaintiff needed additional documentation for banking examiners to support its loans to Kenneth Schapeler, and for that purpose only, the Plaintiff requested Defendants to execute a promissory note ... and a deed of trust ... to satisfy banking examiners, but that based upon Plaintiff's ability to provide additional financing in such amounts and upon such terms and based upon Kenneth Schapeler's business and financial condition and ability, there would be no expectation that Defendants would ever have to pay such promissory note or that the deed of trust would ever be foreclosed upon as a result of Kenneth Schapeler's non-payment of the promissory note;

(b) That the Defendants did rely upon the financial information and advice given to them by Plaintiff concerning their execution of said promissory note and deed of trust;

(c) That the financial information and advice provided to Defendants by Plaintiff was false;

(d) That the Plaintiff knew such information and advice was false;

(e) That Defendants relied upon Plaintiff's financial advice and information in executing the promissory note and deed of trust, and Plaintiff knew Defendants relied upon that advice in executing the promissory note and deed of trust and would not have executed such promissory note and deed of trust if it had not been for Plaintiff's representations and assurances;

(f) That Plaintiff greatly benefitted from Defendants' executing the promissory note and deed of trust as Plaintiff obtained additional security for loans which were previously unsecured and were known to Plaintiff to be in such a condition that repayment would be doubtful as it would not be able to provide to Kenneth Schapeler additional sums of money upon terms which would allow Kenneth Schapeler to repay the sums of money based upon Kenneth Schapeler's business and financial condition and ability.

█ Citizens Bank contends in its brief that the Schapelers' pleading alleges four separate representations: (1) that the new note was required by bank examiners; (2) that the bank would continue to loan funds to Kenneth; (3) that the Schapelers would never have to repay the note they signed; and (4) that Kenneth's financial condition was such that he could repay the loan. Citizens Bank further contends that two aspects of the Schapelers' pleading are fatal to the affirmative defense as a matter of law: (1) the alleged misrepresentation relating to a promise to lend further funds to Kenneth in the future; and (2) the alleged misrepresentation as to the legal effect of the written instrument, *i.e.*, that the Schapelers would never have to repay the note.[2]

Citizens Bank mischaracterizes the allegations contained in the Schapelers' affirmative defense. The essence of the Schapelers' affirmative defense is that Citizens Bank represented that the bank examiners were requiring additional collateral on Kenneth's notes and that if the $167,000 note were executed, Kenneth could continue on in his business and have more borrowing power. This was a factual representation, not a representation of law as appellant contends. Based on this representation, and having no reason to believe that Kenneth was in financial trouble and would be unable to repay his notes, the Schapelers executed the $167,000 note.

Finally, appellant alleges that the Schapelers did not sufficiently plead the intent of Citizens that the representation be acted upon, the fifth element of fraud. In this regard, we note that under Rule 55.15, the intent element of fraud need not be pleaded with particularity. Furthermore, intent can be inferred from the circumstances. *Bauer v. Adams*, 550 S.W.2d 850, 853 (Mo.App. 1977).

In the Schapelers' pleading, subparts (a), (e), and (f) of paragraph 6 allege sufficient facts from which intent can be inferred. Thus, the intent element was sufficiently plead.

We find that the Schapelers sufficiently plead all of the essential elements of their affirmative defense. The averments in the Schapelers' affirmative defense stated with sufficient particularity the circumstances under which the alleged representations were made.

Appellant's second point is denied.

### III.

In its third point on appeal, appellant argues that the trial court erred in overruling appellant's Motion for a Directed Verdict at the close of all the evidence and in denying appellant's post-trial Motion for Judgment Notwithstanding the Verdict, each with respect to the Schapelers' affirmative defense of fraudulent inducement. Appellant contends that the Schapelers did not make a submissible case for their affirmative defense due to a failure to prove by clear and convincing evidence each of the essential elements.

█ The party alleging fraud bears the burden of proof for each element of fraud and must satisfy that burden with clear and convincing evidence. *Centerre Bank of Independence v. Bliss*, 765 S.W.2d 276, 284 (Mo. App.1988). Fraud cannot be presumed, but it may be inferred and shown by circumstantial evidence. *Farr v. Hoesch*, 745 S.W.2d 830, 832 (Mo.App.1988).

█ The Schapelers' testimony, as set out at the beginning of this opinion, was that Ted

---

2. Citizens Bank also contends that the Schapelers were pleading oral representations to vary the terms of a written agreement, thus invoking the parol evidence rule. This argument is asserted for the first time on appeal and we will not review it.

Lambert, acting on behalf of Citizens Bank, represented that additional collateral was needed to secure Kenneth's loans and that Kenneth would be able to continue on in his business if the $167,000 note were signed and would be able to continue borrowing from the bank. According to the Schapelers, they were told that they would never have to pay on the note, that Kenneth was not having financial troubles, and that the note was merely for the purpose of obtaining additional security to satisfy the banking examiners. Had the Schapelers known that they would have to repay the note, they would not have signed the note. They testified that they relied on Lambert's representations in executing the note. They did not expect to have to repay the note.

Furthermore, Kenneth testified that he eventually had to file for bankruptcy because he had no more credit on the $167,000 note. He could not continue to operate his business without operating capital.

The evidence and the inferences therefrom support the Schapelers' claim that they were fraudulently induced to sign the note in question. We find that there was sufficient evidence of fraud to make a submissible case.

Appellant's third point is denied.

### IV. and V.

In its fourth and fifth points on appeal, appellant argues that the trial court erred in submitting the Schapelers' verdict directing instruction, Instruction No. 9, on their affirmative defense of fraudulent inducement. Appellant contends that (1) the instruction was a modified MAI instruction that did not include the intent element of fraud, and (2) the instruction was so general as to give the jury a "roving commission" to find whatever it wanted to find because it did not define the ultimate facts upon which a recovery could be predicated.

Instruction No. 9 reads as follows:

Your verdict must be for defendants if you believe:

First, prior to the execution of the promissory note, plaintiff represented to the defendants that the purpose of the note was to satisfy a banking examiner requirement and that the plaintiff would be able to provide all financing made and agreed to be made to Kenneth Schapeler in such amounts and upon such terms that would allow Kenneth Schapeler to repay and satisfy all outstanding loans with plaintiff based upon his business and financial condition, and

Second, the representation was false, and

Third, plaintiff knew that the representation was false at the time it was made, and

Fourth, the false representation was material to the decision of the defendants to sign the promissory note, and

Fifth, defendants relied on the representation in executing the promissory note and in so relying, defendants were using ordinary care, and

Sixth, as a direct result of such representation the defendants were damaged.

This instruction is based on MAI 23.05, however it omits the phrase "intending that defendants rely upon such representation," which is supposed to appear immediately after the description of the allegedly false representation in the first paragraph.

The following principles apply to appellate review in a case of instruction error resulting from a deviation from MAI format: (1) Where the dictates of MAI prescribe a particular form of instruction, the giving of an instruction contrary to that requirement constitutes error which is presumed to be prejudicial; (2) The burden is on the party who offered the erroneous instruction to demonstrate on appeal that the erroneous instruction created no substantial potential for prejudicial effect; (3) It is the province of the court to determine whether the erroneous instruction caused a prejudicial effect; and (4) No judgment is to be reversed on account of instruction error unless the error materially affected the merits of the case. *Powers v. Ellfeldt,* 768 S.W.2d 142, 146 (Mo. App.1989). Instructional error is no longer an automatic ground for reversal; rather, instructional error stands as a ground for reversal only where the record on appeal indicates substantial prejudice. *Johnston v. Allis–Chalmers Corp.,* 736 S.W.2d 544, 547 (Mo.App.1987).

■ An instruction is considered prejudicial where it submits a legal question in an abstract way giving the jury a roving commission to return a verdict without being limited to any issues of fact or law developed in the case. *Powers,* 768 S.W.2d at 146–47 (citations omitted).

Initially, we note that Instruction No. 9 did not submit an abstract proposition without limit or qualification to any issue of fact in the case. To the contrary, the instruction concretely sets out the alleged representation by Citizens Bank and the issue of fraudulent inducement to sign the note. The instruction did not give the jury a "roving commission."

The only issue for determination, therefore, is whether the omission of the words, "intending that defendants rely upon such representation," at the end of the first paragraph of the instruction created a substantial potential for prejudice which materially affected the outcome of the case. Outside of failure to include "intent," the Schapelers' Instruction No. 9 complies almost verbatim with MAI 23.05.

At trial, appellant made no specific objection to Instruction No. 9. Appellant only made a general objection that the instruction "incorrectly hypothesize[d] the law" and was not supported by the evidence. Appellant did preserve the issue by specifically raising the failure to include "intent" in Instruction No. 9 in its motion for new trial. However, the trial court rejected appellant's contention that this constituted prejudicial error.

■ While objections at trial to instructions are not required to preserve a claim of error, a party's failure to make a specific objection to an instruction prior to its submission is a factor to be considered in determining whether that party was prejudiced by the erroneous instruction. *Johnston v. Lerwick,* 738 S.W.2d 868, 869 (Mo. App.1986) (citing *Cornell v. Texaco, Inc.,* 712 S.W.2d 680, 682 (Mo. banc 1986)). Another factor to be considered in determining prejudice is an objecting party's failure to tender a corrected instruction. *Kopp v. Pennoyer,* 723 S.W.2d 528, 531 (Mo.App.1986). Moreover, this court gives great deference to the conclusion of the trial judge as to the prejudicial effect of errors in instruction. *Goff v. St. Luke's Hosp.,* 753 S.W.2d 557, 565 (Mo. banc 1988).[3]

■ While intent is an essential element of fraud, it was not a disputed issue in the case at bar. The disputed issue in the case concerned the representations themselves. There can be no prejudicial error where an instruction omits an element that is not in dispute. *McPherson v. Bi–State Development Agency,* 702 S.W.2d 129, 132 (Mo.App. 1985) (citing *Young v. Frozen Foods Express, Inc.,* 444 S.W.2d 35, 40 (Mo.App.1969)).

■ Nonetheless, Instruction No. 9 includes the elements of knowledge and reliance, *i.e.,* that Citizens Bank knew the representation was false and that the Schapelers relied upon such representation in executing the note. Intent can be inferred where the false statement, in its nature calculated to defraud, is made with knowledge of its falsity. *Cohen v. Metropolitan Life Ins. Co.,* 444 S.W.2d 498, 505 (Mo.App.1969).

■ In the case at bar, the jury could infer an intent on the part of Citizens Bank that the Schapelers rely upon the bank's representations, where the jury found that the bank knew the representation was false and that the Schapelers relied on the repre-

---

3. Rule 70.03 provides as follows:

Counsel need not object to any instructions to be given at the request of any other party.... Specific objections to instructions shall be required in motions for new trial unless made at trial. The making of objections during trial shall not preclude making additional objections to the same or other instructions in the motion for new trial. No general objection to instructions is required.

We note that this rule was amended on June 1, 1993, to be effective as of January 1, 1994. The amended rule 70.03 reads as follows:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

sentation in executing the note. In other words, it is reasonable to infer that the only purpose the bank had in making the representation alleged was to convince the Schapelers to execute the promissory note. The bank would not have made the representation had it not intended for the Schapelers to rely upon it in executing the note.

With the foregoing principles in mind, we find that the trial court did not err in submitting Instruction No. 9 because the presumption of prejudice is refuted by the record.

Appellant's fourth and fifth points are denied.

## VI. and IX.

In its sixth point on appeal, appellant argues that the trial court erred in giving the Schapelers' Instruction No. 11 because it was not supported by the evidence. In its ninth point, appellant contends that the trial court erred in sustaining the Schapelers' post-trial motion for interest on the jury's verdict on their counterclaim for conversion because the verdict was wholly improper. As to both points, appellant contends that the Schapelers' counterclaim for conversion was really a set-off against appellant's claim on the note in question.

Instruction No. 11 provides as follows:

On the claim of defendants Ruben A. Schapeler and Norma J. Schapeler for conversion, your verdict must be for defendants if you believe:

First, defendants were the owners of the $80,006.41 funds delivered to plaintiff on July 19, 1984, and

Second, plaintiff was directed to use those funds for purposes of paying on defendants' promissory note but plaintiff used the funds for other purposes, and

Third, defendants were thereby deprived of the use of the $80,006.41 in funds.

This instruction follows MAI 23.12(1).

■ Where funds are placed in the custody of another for a specific purpose and they are used for other than that specified purpose, the holder of the funds is subject to liability in conversion. *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo.1981). In other words,

misappropriation of funds placed in the custody of another for definite application makes the holder liable in conversion. *Seabaugh v. Seabaugh*, 839 S.W.2d 49, 50 (Mo.App.1992).

■ The proper measure of damages in a conversion case is the reasonable market value of the property at the time of conversion. *Southern Missouri Bank v. Fogle*, 738 S.W.2d 153, 158 (Mo.App.1987). Furthermore, to allow full indemnity, interest is allowed in conversion cases on the value of the converted property from the date of its conversion. *Id.;* § 537.520, RSMo 1986.

■ The evidence in the case at bar supports the Schapelers' claim that Ted Lambert was given a check which he diverted from its intended purpose. The record reflects that the check delivered to Citizens Bank on July 19, 1984 was from the proceeds of the sale of property owned by Ruben and Norma Schapeler. The check was signed by Ruben Schapeler and was to be delivered to Citizens Bank by Kenneth Schapeler for application toward the $167,000 note. Kenneth testified that he delivered the check to the bank with specific instructions from his father to fill out the check for no more than $85,000 and to have the money applied to the $167,000 note. Kenneth further testified that he told Ted Lambert that he wanted the money applied to the $167,000 note. Kenneth later discovered, however, that the money was applied to his other notes, for which Ruben and Norma were not obligated.

The evidence supports the giving of Instruction No. 11 and supports the jury's verdict in favor of the Schapelers on their counterclaim for conversion. Furthermore, the trial court did not err in awarding the Schapelers interest on the money that was converted.

Appellant's sixth and ninth points are denied.

## VII.

In its seventh point, appellant argues that the trial court erred in overruling appellant's objection to the testimony of Ron Hammelman because such testimony was incompetent, irrelevant, and otherwise prejudicial. Appellant contends that the expert testimony

offered by the Schapelers through witness Hammelman about customs and procedures in the banking industry was accomplished without a proper foundation and was not, in general, relevant to prove or disprove any fact at issue in the lawsuit.

■ Admitting or excluding expert testimony is generally left to the sound discretion of the trial court. *Boyer v. Eljer Mfg., Inc.,* 830 S.W.2d 535, 539 (Mo.App.1992). That decision should not be disturbed absent an abuse of discretion. *Id.*

■ In order for an expert witness to be qualified, it must appear that because of education or specialized experience the person possesses superior knowledge respecting a subject about which persons having no particular training are not able to form an accurate opinion or draw correct conclusions. *Id.* An expert must have sufficient skill, knowledge, or expertise so that his opinion may aid the trier of fact. *Id.*

■ In the case at bar, Ron Hammelman testified that he was president and chief executive officer of a bank with eighteen years of experience in the banking industry, particularly in the field of lending. The oversight of loan portfolios was a major part of his career in the banking industry.

Mr. Hammelman testified to practices and procedures, particularly in the field of lending, that are recognized throughout the banking industry. Mr. Hammelman testified that a bank examiner cannot require additional collateral from a customer who already has notes outstanding at the bank. He further testified that when a customer brings in funds to the bank to repay a loan, the check is reviewed and then the customer is asked where he would like to apply the proceeds of that check. If there is any question as to where the payment should be applied, bank officials should check with the customer. In a case where the check is signed by a person other than the person who brought the check into the bank, Mr. Hammelman testified that the bank should call the party that signed the check to ensure that the loans are being applied to the proper account.

Mr. Hammelman's testimony was designed to assist the jury in understanding the evidence. His testimony was relevant to the issues of fraud and conversion, and aided the jury in understanding the customs and procedures in the lending area of banking.

The trial court did not abuse its discretion in allowing Ron Hammelman to testify about customs and procedures in the banking industry, as he was qualified as an expert and his testimony was relevant to the issues in the case at bar.

Appellant's seventh point is denied.

## VIII.

In its eighth point on appeal, appellant argues that the trial court erred in overruling appellant's objection to the admission of the Schapelers' Exhibit A, a photocopy of the $167,000 note, because it was irrelevant and misleading in that it contained notations which did not accurately reflect the unpaid amount of the note.

■ Substantial deference is shown a decision of the trial court as to the admissibility of evidence, which will not be disturbed absent a showing of abuse of discretion. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration. *Id.* (citation omitted).

■ On the back of Exhibit A, a photocopy of the $167,000 note, there were notations reflecting a balance due of $134,000 on the note. However, on appellant's Exhibit 1, the original copy of the $167,000 note, the notations on the back, which were supposedly the record of payment, were whited out. Thus, Exhibit A and Exhibit 1 were inconsistent and reflected different amounts due on the same note. Because appellant, as part of its case, was required to prove that the Schapelers were liable on the note and what the balance due on the note was, the trial court was well within its discretion in admitting the Schapelers' Exhibit A into evidence. It was for the jury to determine, based on the testi-

mony adduced, which version of the note reflected the correct amount due.

The judgment of the trial court is affirmed.

All concur.