Harold RICE, et al., Respondents,

v.

Todd BOL and Philip W.
Bledsoe, Defendants,

EPT Cadre, Ltd., Respondent,

Intelligent Electronics, Inc., and The
Future Now, Inc., Appellants.

No. WD 60092.

Missouri Court of Appeals,
Western District.

July 22, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 2, 2003.

As Modified Sept. 2, 2003.

Application for Transfer Denied
Oct. 28, 2003.

Robert K. Ball II and H. George Lafferty, Jr., Kansas City, MO, for Respondents.

Douglas S. Laird, Kansas City, MO, for Appellants.

Before SMART, P.J., and EDWIN H. SMITH and HOLLIGER, JJ.

EDWIN H. SMITH, Judge.

Intelligent Electronics, Inc. (IE), and The Future Now, Inc. (TFN), appeal from the judgment of the Circuit Court of Jackson County entered on jury verdicts for the respondent, Harold Rice, awarding him $925,073.10 against IE and $1,264,454.97 against TFN on his breach of contract claims brought "on behalf of EPT Cadre, Ltd." (EPT), which the jury found was owned equally by the respondent and Todd Bol. The awards to the respondent represented the monies the jury found that the appellants owed to EPT under separate contracts. At trial, the appellants contended that the respondent's claims were barred by a settlement and release agreement executed by Bol, as the president of EPT, which they asserted settled any and all claims between the appellants, EPT, Bol and the respondent, arising out of the contracts.

The appellants raise four points on appeal. In Point I, they claim that the trial court erred in overruling their motions for

directed verdict at the close of the respondent's evidence and at the close of all the evidence because the respondent did not make a submissible case for breach of contract with respect to the issue of whether the written settlement and release agreement executed by Bol on behalf of EPT was binding on the corporation. In Point II, they claim that the trial court erred in giving the respondent's verdict directors, Instructions No. 7 and 11, and in rejecting two instructions they requested because, in doing so, it misled the jury on the applicable law necessary to decide the case by failing to define "authority" as including "actual or apparent" authority and failing to further define what constituted apparent authority. In Point III, they claim that the trial court erred in prohibiting the appellants from arguing in closing argument that the law in Missouri concerning Bol's authority to execute the settlement agreement on EPT's behalf recognized two types of authority, actual and apparent. In Point IV, they claim that the trial court erred in overruling their post-trial motion to reduce the judgment for the respondent because it was undisputed that they had already paid $375,000 to EPT in settlement of the monies claimed due under their respective contracts and were due a credit against the judgment in that amount.

We reverse and remand.

### Facts

In 1982, the respondent formed the American Exchange Network (AMX), which was involved in the "trade credit" or "barter" business. The "trade credit" business involves the exchange of goods and services for other goods and services without the payment of money. The respondent, through AMX, assisted companies that were looking to dispose of excess inventory in return for trade credits. In March 1992, the respondent and Bol formed EPT, a Missouri corporation, which, using AMX's contacts, sought to locate businesses that were seeking to dispose of inventory to match with businesses willing to acquire the inventory in return for trade credits. In exchange for its services, EPT was to receive a commission based upon the value of the goods and services exchanged.

While the respondent worked out of his office in Kansas City, Missouri, Bol opened an office in Minneapolis, Minnesota. EPT's articles of incorporation listed the respondent as the registered agent and Bol as the incorporator and sole director. On all of the annual reports EPT filed with the Secretary of State of Missouri from 1992–1995, which were filled out by the respondent, the respondent was listed as the secretary or treasurer of EPT, and, with the exception of 1994, he was also listed as a director of EPT. Also, from 1992 through 1995, the principal place of business for EPT was designated as Kansas City, Missouri. On the annual reports filed from 1996–1999, which Bol completed, Bol was listed as the sole officer and sole director of EPT. In addition, during 1996–1998, the principal place of business for EPT was listed as Minneapolis, Minnesota, and, in 1999, it was listed as Afton, Minnesota. On all of the annual reports filed with the State of Missouri, Bol was listed as the president of EPT, and, with the exception of 1994, when no directors were listed, Bol was listed as a director of EPT.

In October 1993, EPT, AMX and IE entered into a contract, which provided that IE would provide personal computer hardware, software, peripherals, and other products to AMX in return for its providing IE, through trade credits, with hotel and resort services, printing and advertising services, long distance services, and certain other services. EPT was designat-

ed in the contract as IE's agent, and, pursuant to a subsequent agreement with IE, EPT was to be paid a 10% commission of the sale value of the trade credits it acquired for IE. EPT entered into a similar contract with TFN in 1994 for its work in obtaining trade credits from AMX for computer-related products produced by TFN.

In mid–1995, IE stopped making payments on the commissions it owed to EPT. TFN, which had been making its required payments to EPT, stopped making payments after it was acquired by IE in late 1995. On September 5, 1995, EPT sent a letter to TFN, notifying it that it owed EPT $854,361.48 for commissions earned by EPT. On October 6, 1995, EPT sent a letter to IE, informing it that it owed EPT $628,233 in commissions.

The respondent and Bol's business relationship began to sour in 1995. Bol was unhappy with expenses that the respondent was charging off against EPT. As a consequence, in early January 1996, Bol went to EPT's office in Kansas City and took possession of many of EPT's records. On January 26, 1996, Bol sent a memo to the respondent, advising him that EPT's Kansas City office would be closed effective January 31, 1996, and that, henceforth, Bol would be the only party authorized to approve expenses or enter into agreements on behalf of EPT. On February 9, 1996, Bol sent a letter to Mercantile Bank advising it that he was the president and 92% shareholder of EPT and that he wanted to remove the respondent as an authorized signatory on all of EPT's accounts. At that same time, Bol, through his attorney, contacted IE and TFN in an effort to settle their outstanding debts with EPT.

On April 11, 1996, after learning that Bol was claiming that he had fired the respondent and was holding himself out as the majority shareholder of EPT, the respondent, through his attorney, sent letters to IE and TFN informing them that there was a difference of opinion among the shareholders as to how EPT's monies were to be divided and that any payments to EPT should continue to be made to the office in Kansas City. Bol's counsel sent letters to IE and TFN on April 19, 1996, which advised that the respondent was merely "a disgruntled former part-time employee" and that they should disregard the respondent's letters. In an apparent attempt to demonstrate Bol's authority to speak for EPT, counsel included copies of EPT's Articles of Incorporation and Certificate of Incorporation, which designated Bol as the incorporator and sole director of EPT.

On April 26, 1996, the respondent filed a "Petition for Equitable Relief and Damages" in the Circuit Court of Jackson County against Bol and EPT. In his petition, the respondent sought: (1) an accounting of EPT's expenses, sales, and profits; (2) an appointment of a special master to determine each party's ownership interest in EPT; (3) a preliminary injunction preventing Bol from dissipating EPT's assets; (4) compensatory damages for expenditures he made for the benefit of EPT; and (5) punitive damages.

On May 29, 1996, the respondent, through his attorney, sent letters to both IE and TFN, informing them of the pending litigation involving the respondent and Bol and reminding the appellants that all monies still due EPT should be paid to EPT's Kansas City office. On June 6, the respondent sent a letter to the chairman of IE's board of directors which provided:

> I am aware of recent attempts by Mr. Todd Bol to have payments due to EPT Cadre, Ltd. from both Intelligent Electronics and The Future Now diverted to an office that is different than the office

designated in EPT Cadre, Ltd.'s contract with both firms.

This letter is to inform you that he has not been authorized by the board of directors to do so and any payments made to him shall not be considered as payments under the terms of EPT Cadre, Ltd.'s contract.

As the Secretary and Treasurer of the Corporation, shareholder and Board member I must insist that the terms of the contract be adhered to without change and payments must be made to my attention at the same office as always here in Kansas City.

On June 11, 1996, Bol's local counsel in Kansas City prepared documents which purported to call EPT's first meeting of shareholders, although Bol was the only person given notice of the meeting. At the meeting, Bol elected himself the sole director, appointed himself the treasurer and president, and issued 100 shares of stock to himself.

Bol and EPT filed their answer to the respondent's petition and a counterclaim against the respondent on July 3, 1996. The counterclaim alleged that the respondent tortiously interfered with EPT's business relationship with IE by contacting IE and demanding payment on its debts. The respondent filed his response to the counterclaim on August 2, 1996.

On February 18, 1997, Bol, purportedly acting on behalf of EPT, executed a settlement and release agreement with IE and TFN. The agreement provided, *inter alia,* that TFN was to pay $200,000 to EPT and assign EPT $3,498,154 in trade credits, in return for EPT's release of IE and TFN from all claims that EPT had against them for any amounts due under the contracts. The settlement agreement contained an indemnity provision, which provided, in pertinent part:

> **6. *Indemnity.*** EPT agrees to indemnify, defend and hold I.E. and TFN ... harmless from and against all suits ... whether as a direct or indirect result of EPT's breach of any of the representations set forth in this Agreement, including but not limited to any claims made by or on behalf of Harold Rice.

On January 20, 1998, the respondent, individually and on behalf of AMX, filed an amended petition against Bol, EPT, IE, TFN, and counsel for Bol. The amended petition included breach of contract counts against IE and TFN, claiming that EPT was due commissions in the amounts of $628,233 and $854,361.48, respectively, plus statutory interest. The respondent's claims against Bol included claims for breach of fiduciary duty, fraudulent conversion, mail fraud, and racketeering, for which the respondent sought actual and punitive damages. The respondent's amended petition included counts of fraud allegedly committed by Bol's counsel based upon his assistance to Bol in his alleged misrepresentations as to his authority to collect money owed to EPT. AMX alleged a single claim against EPT for breach of contract resulting from EPT's failure to pay AMX for furniture, equipment and other items it furnished to EPT.

In early April 1998, the respondent's case was removed to the United States District Court for the Western District of Missouri. On April 24, 1998, IE and TFN filed their answer to the amended petition, in which they pled, *inter alia,* the affirmative defense of settlement and release. On November 19, 1998, the federal court dismissed the respondent's remaining claims against Bol's counsel, the others having previously been dismissed in state court. The case was then transferred back to the Circuit Court of Jackson County upon the dismissal of the respondent's other federal claims.

The case proceeded to a jury trial in the circuit court, which commenced on February 13, 2001. IE and TFN moved for a directed verdict at the close of the respondent's evidence and at the close of all of the evidence, both of which were overruled by the trial court. The case was submitted to the jury, which returned verdicts on February 20, 2001, for the respondent on his claims of breach of contract against IE and TFN, and for fraudulent conversion against Bol. The jury assessed damages of $925,073.10 against IE; $1,264,454.97 against TFN; $275,538.07 against Bol for actual damages, and $460,538.07 against Bol for punitive damages. As to AMX's claim against EPT, the jury found for EPT, and found for the respondent on EPT's counterclaim against the respondent.

On March 13, 2001, AMX dismissed all its claims against Bol and EPT, and Bol and EPT dismissed all counterclaims against the respondent and AMX. On that same day, the trial court entered its judgment in accordance with the verdicts returned by the jury. On April 12, 2001, IE and TFN filed a joint motion for judgment notwithstanding the verdict, or in the alternative for a new trial, and a motion to amend or modify the judgment. The trial court denied those motions on May 29, 2001.

This appeal follows.

## I.

■ All three claims of error raised in the appellants' Points I, II and III revolve around the issue of whether Bol, acting as the president of EPT, had actual or apparent authority to enter into the settlement and release agreement with the appellants on behalf of EPT, effectively settling and releasing any and all claims that EPT had against the appellants under the appellants' contracts with EPT and barring the respondent's claims thereon. In that regard, there was no dispute at trial that the parties entered into the commission contracts with EPT or that EPT was due certain commissions thereunder. There was also no dispute that Bol entered into the settlement and release agreement with the appellants, as EPT's president, to resolve the issue of the commissions owed. And, there was also no dispute that if the agreement was valid as to EPT and binding upon it, the respondent's claims against the appellants were barred.

■ Although a release is considered an affirmative defense to be asserted and proven by the defendant, Rule 55.08, here, because the respondent admitted that Bol had executed a release of the appellants on behalf of EPT, the burden switched to the respondent to prove the invalidity of the agreement. *Landmark N. County Bank & Trust Co. v. Nat'l Cable Training Ctrs., Inc.,* 738 S.W.2d 886, 890 (Mo.App.1987). Thus, the jury was instructed in Instructions No. 7 and 11, the respondent's verdict directors as to IE and TFN, respectively, that for the respondent to recover on behalf of EPT, he had to prove, *inter alia,* that "Bol had no authority from EPT Cadre, Ltd. to enter into [the] settlement agreement, and . . . [the respondents] knew or should have known Defendant Bol had no authority to do so."

Although Points I, II and III are intertwined, we believe that Point II is actually dispositive of the appeal; hence, we address it alone. The appellants claim in Point II that the trial court erred in failing to instruct the jury on the definition of "authority" as that term appears in Instructions No. 7 and 11, the respondent's verdict directors, because, in doing so, it misled the jury on the applicable law necessary to decide the case. Instruction No. 7, the verdict director for IE, reads:

Your verdict must be for plaintiff Harold Rice on behalf of EPT Cadre, Ltd., and against Defendant Intelligent Electronics, Inc., if you believe:

First, Plaintiff Harold Rice was an equal shareholder of EPT Cadre, Ltd., and

Second, EPT Cadre, Ltd., and Defendant Intelligent Electronics, Inc. entered into an agreement whereby EPT Cadre agreed to sell the excess inventory of Intelligent Electronics, Inc. for a commission, and Defendant Intelligent Electronics, Inc. agreed to pay a commission to EPT Cadre, Ltd., for doing so, and

Third, EPT performed its agreement, and Defendant Intelligent Electronics, Inc. agreed the commission due was the sum of $1,359,233, reduced, after payments to $628,233, and

Fourth, Defendant Intelligent Electronics, Inc. failed to perform its agreement, and entered into an agreement with EPT Cadre, Ltd., signed by Defendant Bol as president, which settled the commission claim of EPT Cadre, Ltd., and

Fifth, Defendant Bol had no authority from EPT Cadre, Ltd. to enter into such settlement agreement, and

Sixth, Defendant Intelligent Electronics, Inc. knew or should have known Defendant Bol had no authority to do so, and

Seventh, Plaintiff was thereby damaged.

Instruction No. 11, the verdict director for TFN, is identical to Instruction No. 7, except for referencing TFN, instead of IE.

■ The question of whether or not a jury was properly instructed is a question of law. *Hosto v. Union Elec. Co.,* 51 S.W.3d 133, 142 (Mo.App.2001). To reverse a jury verdict on the ground of instructional error, it must appear that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction. *Williams v. Fin. Plaza, Inc.,* 23 S.W.3d 656, 658 (Mo.App.2000). In determining whether the jury was misdirected, misled or confused by an instruction is "whether an average juror would correctly understand the applicable rule of law" being conveyed thereby. *Lashmet v. McQueary,* 954 S.W.2d 546, 550 (Mo.App.1997) (citations omitted). For prejudice to be found sufficient to reverse for instructional error, the error must have materially affected the merits and outcome of the case. *Hill v. Hyde,* 14 S.W.3d 294, 296 (Mo.App. 2000).

■ If there exists an applicable MAI, Rule 70.02(b) mandates its exclusive use. If an applicable MAI requires modification to fairly submit the issues or where a non-MAI instruction must be given because there is no applicable MAI "then such modifications or such instruction[ ] shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." *Id.* "Where ... a challenged instruction is not found in MAI, the question is whether it follows the substantive law and can be readily understood." *MFA Inc. v. Dettler,* 817 S.W.2d 658, 663 (Mo. App.1991).

Although, unfortunately, we are not blessed with the subscripted copies of the jury instructions, it would appear that the respondent's verdict directors are patterned after a modified version of **MAI 26.06 [1981 Revision] Verdict Directing—Breach of Bilateral Contract—Terms and Breach in Issue,** which reads:

Your verdict must be for plaintiff if you believe:

First, plaintiff and defendant entered into an agreement whereby plaintiff

agreed (*set out plaintiff's agreement*) and defendant agreed (*set out defendant's agreement*), and

Second, plaintiff performed his agreement, and

Third, defendant failed to perform his agreement, and

Fourth, plaintiff was thereby damaged. *[unless you believe plaintiff is not entitled to recover by reason of Instruction Number —— (*here insert number of affirmative defense instruction*)].

Inasmuch as the terms of the contracts in question here were not in dispute, it would seem that **MAI 26.02 [1980 Revision] Verdict Directing—Breach of Bilateral Contract—Breach Sole Issue** would have been the appropriate MAI for modification. However, the fact that the respondent apparently accepted a greater burden of proof by employing MAI 26.06, rather than 26.02, did not prejudice the appellants' case with the jury and, therefore, does not enter into our analysis. *Arnold v. Ingersoll–Rand Co.*, 908 S.W.2d 757, 762–63 (Mo.App.1995). In any event, Instructions No. 7 and 11 modified MAI 26.06 to include: (1) paragraph First, which asked the jury to consider whether the "[respondent] was an equal shareholder of EPT"; and (2) paragraphs Fifth and Sixth, which asked the jury to consider whether the "defendant Bol had no authority from EPT Cadre, Ltd. to enter into [the] settlement agreement, and ... [whether] Defendant [IE or TFN] knew or should have known Defendant Bol had no authority to do so."

The appellants objected to the giving of Instructions No. 7 and 11, seeking to include in paragraphs Fifth and Sixth thereof, immediately preceding the term "authority," the phrase "actual or apparent." They contended that this language was necessary to instruct the jury on the applicable law, specifically that it was sufficient

for Bol to bind EPT with respect to the settlement and release agreement if he had actual or apparent authority to do so. With respect to that same issue, the appellants also sought the giving of two additional instructions explaining the law with respect to apparent authority, which were rejected by the trial court. Those proffered instructions read:

Acts of Todd Bol were within the 'scope and course of agency' as that phrase is used in these instructions if:

First, the conduct of Todd Bol was such that an ordinary careful person would believe that Tod [*sic*] Bol had authority to perform such acts on behalf of EPT Cadre, Ltd., and

Second, Intelligent Electronics, Inc. and The Future Now, Inc. reasonably relied on such conduct of Todd Bol at the time of the transaction mentioned in the evidence.

Submitted by Defendants Intelligent Electronics, Inc. and The Future Now, Inc.

MAI 13.07(1) [1996 Revision].

\* \* \* \* \* \*

A corporation is bound by the acts of its officers within the scope of their authority. The authority of an officer to act on a given matter may be actual authority or apparent authority.

Submitted by Defendants Intelligent Electronics, Inc. and The Future Now, Inc. *Sturgeon v. State Bank of Fisk*, 616 S.W.2d 578, 583–84 (Mo.App.1981).

MAI 13.07(1) [1996 Revision], after which the appellants indicated their instruction defining "scope and course of agency" was patterned, reads:

Acts of (*name of apparent agent*) were within the 'scope and course of agency' as that phrase is used in this [these] instruction[s] if:

First, the conduct of (*name of apparent principal*) was such that an ordinarily careful person would believe that (*name of apparent agent*) had authority to perform such acts on behalf of (*name of apparent principal*), and

Second, (*name of relying person*) reasonably relied on such conduct of (*name of apparent principal*) at the time of the transaction mentioned in the evidence.

In comparing the appellants' proffered agency instruction to MAI 13.07(1), the MAI referenced in the instruction, we note that although the latter mandates the insertion of the "*name of the apparent principal*" immediately after the "conduct of" language in paragraphs First and Second, the appellants inserted the name of the apparent agent, Bol. Although not in keeping with MAI 13.07(1), the insertion of the name of the apparent agent would actually have been in keeping with MAI 13.07(2), which reads:

Acts of (*name of apparent agent*) were within the 'scope and course of agency' as that phrase is used in this [these] instruction[s] if:

First, the conduct of (*name of apparent agent*) was such that an ordinarily careful person would believe that (*name of apparent agent*) had authority to perform such acts on behalf of (*name of apparent principal*), and

Second, (*name of apparent principal*) knew or had reason to know of such conduct and allowed such conduct, and

Third, (*name of relying person*) reasonably relied on such conduct of (*name of apparent agent*) at the time of the transaction mentioned in the evidence.

While the appellants' proffered instruction does comply with MAI 13.07(2) with respect to the insertion of the "apparent principal" language, it otherwise fails to comply in that it fails to include paragraph Second of MAI 13.07(2) concerning the apparent principal's knowledge of the conduct of the apparent agent. While MAI 13.07(1) relies solely on the conduct of the apparent principal to establish the authority of the apparent agent, MAI 13.07(2) relies on the conduct of the apparent agent, predicated on the apparent principal's being aware of and allowing such conduct. Committee Comment (1986 New), MAI 13.07(1). Given the appellants' specific reference to MAI 13.07(1) in the trial court's copy of the instruction and its compliance with that MAI in every respect but the reference to the apparent agent, rather than the apparent principal, we would conclude that the appellants intended and were requesting that the court give an instruction in conformity with MAI 13.07(1).

 There is not and cannot be any real dispute that the definition of authority or agency, which the appellants unsuccessfully sought to have the jury instructed upon, was a correct statement of the law with respect to the issue the jury was required to decide as to whether Bol had the necessary authority to enter into the settlement agreement with the appellants on EPT's behalf. In that regard, it is well settled that the "power of a corporate officer, like that of any other agent, to bind his or her corporation in contract ordinarily rests either upon such officer's actual authority or upon his or her apparent authority." *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 9 (Mo.App.2002) (citations omitted). "A corporate officer's actual authority derives, on the one hand, from statute or from the articles and by-laws of the corporation, or on the other hand from the officer's exercise of functions on behalf of the corporation, long tacitly acquiesced in by the board of directors." *Gaar v. Gaar's Inc.*, 994 S.W.2d 612, 617 (Mo.App. 1999) (*citing Parks v. Midland Ford Trac-*

*tor Co.,* 416 S.W.2d 22, 26 (Mo.App.1967)). In contrast, apparent authority comes into existence by the corporation's creation of an appearance of affairs which would cause a reasonable person to believe that the officer had actual authority to do a particular act, upon which appearance a third person relies. *Holtmeier v. Dayani,* 862 S.W.2d 391, 401 (Mo.App.1993). However, the fact that the definition of authority urged by the appellants correctly states the law is not the deciding issue in resolving this appeal. The issue is whether the failure of the trial court to instruct on the definition of authority misdirected, misled, or confused the jury as to the applicable rule of law concerning the issue of Bol's authority to enter into the settlement agreement on behalf of EPT such that the merits and outcome of the case were materially affected.

 With respect to defining terms appearing in MAI instructions, the MAI provides:

> In practice, some confusion has arisen concerning definitions. Included in this book are indications in the Notes on Use for each instruction when it contains a term or phrase which must be defined. The definitions are necessary to interpret a legal term for a lay jury and they are utilized in accord with standard No. 4 of the 1963 report to the Supreme Court:
>
> (4) Is it stated in language the average juror can understand?
>
> Thus, when it is indicated that a term or phrase must be defined, it is error to omit the provided definition.

**HOW TO USE THIS BOOK, Committee Comment (1996 Revision), DEFINITIONS, MANDATORY OR PERMISSIBLE, p. LVI.** "Even if not mandated by MAI, however, a trial court must define for the jury legal or technical terms occurring in the instructions, for their meaning is not within the ken of the ordinary juror." *Brock v. Firemens Fund of Am. Ins. Co.,* 637 S.W.2d 824, 827 (Mo.App. 1982). And, while the trial court must define legal or technical terms, it need not define non-technical, readily understood words or commonly used words. *MFA Inc.,* 817 S.W.2d at 664. With respect to defining terms not mandated by MAI, the MAI provides:

> If you use a term not having an MAI definition which you believe should be defined, prepare a definition and tender it to the trial judge. Whether the judge gives a definition instruction which is not mandatory is largely discretionary. Giving a definition of an MAI instruction term obtained from an approved instruction is a modification of the instruction and is subject to all of the standards of modification.

**HOW TO USE THIS BOOK, Committee Comment (1996 Revision), DEFINITIONS, MANDATORY OR PERMISSIBLE, p. LVI.**

There is no applicable MAI for submitting a breach of contract case involving the agency of a corporate officer based on actual or apparent authority, as in our case. Thus, as noted, *supra,* to allow the jury to deliberate on the requisite proof element of the respondent's case concerning Bol's agency or authority to enter into the settlement agreement with the appellants on behalf of EPT, the respondent modified MAI 26.06 dealing with the breach of a bilateral contract to include the issue of agency. Thus, despite the respondent's failure to use the "scope and course of agency" language appearing in MAI 13.07(1), the issue of Bol's agency in executing the settlement agreement was squarely before the jury. In that regard, the **Notes on Use (1990 Revision), MAI 18.01 [1991 Revision] Verdict Directing—Agency in Issue—Modification Re-**

**quired,** provide that "[w]hen the issue of agency is submitted, the appropriate definition *must* also be submitted. See MAI 13.02 to MAI 13.07(2)." (Emphasis added.) Hence, although the respondent chose, for whatever reason, not to use in his verdict directors the agency language of MAI 13.07(1), specifically the "scope and course of agency" language, inasmuch as the issue of Bol's agency was squarely submitted therein, the trial court, pursuant to the **Notes on Use (1990), MAI 18.01** [**1991 Revision**], was duty bound to give the appropriate MAI defining Bol's "scope and course of agency" with EPT, either MAI 13.07(1) or 13.07(2). The trial court's failure to give the appropriate agency instruction as mandated by **MAI 18.01, Notes on Use (1990),** was presumptively error. *Baltzell v. Van Buskirk,* 752 S.W.2d 902, 907 (Mo.App.1988); *Nakata by Nakata v. Platte County R–3 School Dist.,* 750 S.W.2d 669, 672 (Mo.App.1988).

The respondent argues in his brief that the trial court did not err in failing to give a definitional instruction of agency because there was insufficient evidence to support its giving. The argument misunderstands the basis for giving the appropriate agency instruction and is without merit. While it is well settled that there must be evidence to support the giving of an instruction, *Deckard v. O'Reilly Automotive, Inc.,* 31 S.W.3d 6, 17–18 (Mo.App.2000), the mandatory giving of the agency instruction is triggered here by the giving of the respondent's verdict directors, wherein the issue of agency was submitted. Thus, rather than an evidentiary basis being the requisite trigger for the giving of the definitional instruction concerning Bol's agency, the trigger in actuality is the issue of agency being submitted in the respondent's verdict directors and his burden of proof thereon. Hence, in this circumstance to argue that a definitional instruction of agency should not have been given as requested by the appellants because it was not supported by the evidence would be tantamount to the respondent's arguing that there was insufficient evidence to support the giving of his own verdict directors, an argument he obviously would not logically and does not make.

Although not expressly argued by the respondent with respect to Point II, as a further basis for contending that the trial court's failure to give the appellants' agency instruction was not error, he essentially argues, by way of argument in Point III, that there was no error because the failure to give the agency instruction did not misdirect, mislead or confuse the jury on the issue of agency in that the closing arguments of appellants' counsel left no doubt that the jury could find for the appellants and against the respondent on his claims if it found that Bol had apparent authority to enter into the settlement agreement with the appellants. In support of his argument, the respondent points to the closing argument of appellants' counsel:

It says here that Todd Bol, defendant Bol, had no authority from EPT Cadre. There are two kinds of authority, either actual or apparent. Now, if Mr. Bol is determined by you to have either one of those kinds of authority, that means he has authority. OK?

What are the two kinds? What do we mean? Actual means that the person, in fact, had the authority to do what he did. And we have gone through and I have listed a number of things that would suggest that, the fact that he had been the president and all of the other details we have gone through. You can find that. If you determine that, that's the end of the analysis and you don't need to go any further. However, if you have questions about that and you don't de-

termine that, you have to examine whether or not there's apparent authority. So even if you don't find that there's actual authority, you can look at the question of apparent authority. And here's how you do that. It's a question of perspective, where you try to determine what's going on. Do you look at what Mr. Bol did and what his authority was or if you look at apparent authority you look at it from the other side, you look at what did IE know, what did TFN know, what was submitted to them, what was told to them. We went through a lot of evidence about all the information provided to IE and provided to TFN about what Mr. Bol's authority was.

In touting this argument of the appellants, the respondent is contending that any misdirection, misleading or confusion created by the trial court's failure to give an instruction defining agency was cured by their counsel's closing argument. We disagree.

While appellants' closing argument concerning actual versus apparent authority would have been helpful to the jury in understanding the applicable rule of law concerning agency, it was not sufficient in our view to allow the jury to render an informed verdict. As we noted, *supra,* the rationale behind mandatory MAI definitional instructions for certain terms appearing in MAI instructions is that they are technical terms which defy the understanding of lay jurors so that to allow a jury to deliberate on an issue predicated on an understanding of such terms without guidance from the court would be to allow the jury to speculate on the law, which is not permitted. *See Citizens Bank of Appleton City v. Schapeler,* 869 S.W.2d 120, 129 (Mo.App.1993) (stating, "An instruction is considered prejudicial where it submits a legal question in an abstract way giving the jury a roving commission to return a verdict without being limited to any issues of fact or law developed in the case."). In mandating in MAI 18.01 [1991 Revision] that the issue of "scope and course of agency," if submitted, must be defined by the giving of the applicable agency instruction, MAI 13.02 to MAI 13.07(2), the MAI clearly recognizes that the issue of agency is a technical legal issue that goes beyond the common understanding of lay jurors, necessitating a definitional instruction. In that regard, while the portion of appellants' counsel's closing argument on which the respondent relies for clarifying the agency issue for the jury does advise the jury that the authority necessary for Bol to execute the settlement agreement on behalf of EPT could be either actual or apparent, it stops short of informing the jury which conduct is the relevant conduct to consider in determining whether Bol had apparent authority to act on EPT's behalf in executing the settlement agreement and does nothing to instruct on the "ordinarily careful person" standard of MAI 13.07(1). Thus, while the appellants' closing argument had the potential to be beneficial in curing the instructional deficiency created by the trial court's failure to instruct on agency, it was not sufficient to adequately inform the jury of the precise rule of law concerning agency, leaving the jury to speculate on exactly what was apparent authority, the very evil mandatory MAI definitional instructions are intended to avoid.

Even assuming, *arguendo,* that the appellants' closing argument was substantively sufficient to cure the instructional deficiency alleged, practically speaking it was not, given the trial court's sustaining the respondent's objection to the portion of the appellant's closing argument concerning the agency issue and its resulting admonition to the jury. In that regard, the record reflects that the respondent object-

ed to the following argument of appellants' counsel concerning actual versus apparent authority:

> Now, there are two of what lawyers call verdict directors that apply to IE and The Future Now. I want to talk about those in a little bit, but I have got a couple of important things to say now. I'll start at the bottom here.
>
> In the fifth paragraph there it says: Defendant Bol had no authority from EPT Cadre, Ltd. What I want you to focus on is authority. That's something that we talked about from the beginning, or early in the opening statement, which it's important for you to understand what that term means.
>
> I hope you can read my handwriting there. I hope so. There are two kinds of authority. This is what the law in Missouri is. There are two kinds of authority—

In response to the respondent's objection, the following bench conference was held:

> RESPONDENT'S COUNSEL: If it please the court, he doesn't have a right to instruct this jury as to what the law is or may be in this case; that's what he's doing.
>
> THE COURT: I do think there's a problem since the instructions are already submitted.
>
> [AWAY FROM BENCH]
>
> RESPONDENT'S COUNSEL: Is my objection sustained?
>
> THE COURT: Yes.
>
> RESPONDENT'S COUNSEL: Is the jury instructed to disregard the last comments of counsel?
>
> THE COURT: Yes. The jury is so instructed to disregard the last comments of counsel.

In Point III, the appellants claim that the trial court's ruling and admonition to the jury with respect to this argument was erroneous in that counsel's remarks under the instructions of the court were fair comment. Although it is not absolutely necessary to our disposition of this appeal to rule one way or the other on this claim of error, we think comment on the court's ruling is relevant to our discussion in that it helps to paint a more complete picture of whether confusion reigned among the jurors with respect to the applicable law in the case concerning Bol's authority to enter into the settlement and release agreement on behalf of EPT.

■ We see nothing objectionable about counsel's argument. And, in ruling and in instructing as it did, the trial court effectively squelched any chance counsel's argument had in curing the instructional deficiency caused by the court's failure to give the mandatory agency instruction. Under our system of jury instruction, it is the responsibility of the trial court to determine and instruct the jury on the applicable law, which the jury is then to apply to the facts, which it determines in rendering its verdict. And, while as a general rule, counsel is prohibited from instructing the jury on the law, the rule not only does not prohibit counsel from discussing the law as set forth in the court's instructions, but encourages it, as long as the discussion states the law fairly and accurately. *State v. Jordan*, 646 S.W.2d 747, 751 (Mo. *banc* 1983). Here, any fair reading of counsel's remarks would lead one to the conclusion that counsel was not discussing the law outside of the instructions, but was simply stating the law as intended by the trial court in its instructions, despite the court's failure to define the term authority in the respondent's verdict directors, as required. In that regard, although the instructions do not expressly mention actual versus apparent authority, the respondent concedes that that was the applicable law of the case in that the jury was, in fact, free

to find the agency of Bol based upon apparent authority.

Regardless of whether the trial court erred in ruling as it did on the appellants' argument, assuming, as we must, that the jury heeded the court's admonition to disregard the argument that: "There are two kinds of authority. This is what the law in Missouri is. There are two kinds of authority," the jury, in deliberating on and rendering its verdicts, was operating under the impression that the law of Missouri with respect to agency did not recognize two kinds of authority, actual and apparent. With this as a given, there could be little doubt about the confusion that must have existed for the jury about what significance to attach to the argument of appellants' counsel concerning two kinds of authority in deciding the lynchpin issue in the case of whether Bol had the authority to enter into the settlement agreement with the appellants on behalf of EPT. This fact, coupled with the fact that the written instructions made no mention of the underlying principles of apparent authority or what constituted the same, would in all probability have left the jury confused as to the rule of law governing agency, despite the argument of counsel that was allowed on that issue. Hence, we reject the respondent's contention that the appellants' closing argument with respect to two kinds of authority was sufficient to clear up the gap in the law that was created by the trial court's failing to give the appropriate agency instruction mandated by the Notes on Use of MAI 18.01 such that error resulted therefrom.

The fact that we find error in the trial court's failure to give the agency instruction mandated by MAI does not entitle them to the appellate relief they seek. In order to find reversible instructional error, we also have to find that the failure of the trial court to give the mandated instruction prejudiced the appellants' case. *Williams,* 23 S.W.3d at 658. For there to be prejudice, the error must have materially affected the merits and outcome of the case. *Hill,* 14 S.W.3d at 296. In the case at bar, there is no dispute that one of the requisite issues for the jury to determine in rendering its verdicts was whether Bol was acting as an agent of EPT when he executed the settlement agreement with the appellants. There is also no dispute that the issue of his agency turned on whether he had actual or apparent authority to enter into the agreement on EPT's behalf. Nonetheless, the respondent contends that any error in failing to give the agency instruction did not materially affect the outcome of the case resulting in prejudice to the appellants, in that even if the agency instruction sought by the appellants had been given, the outcome would not have been any different since the evidence was such that the only conclusion that the jury could have reached with respect to Bol's agency was that he had no authority to bind EPT by entering into the settlement agreement with the appellants. We disagree.

■ As a general rule, it is not error for the trial court to fail to instruct on a factual issue or proof element on which there is no serious dispute at trial in that no prejudice results. *Schapeler,* 869 S.W.2d at 129. Likewise, it generally is not error to give a definitional instruction where the term or phrase to be defined concerns an issue not in serious dispute at trial. *State v. King,* 988 S.W.2d 663, 667 (Mo.App.1999). In the case at bar, however, the issue of Bol's agency was in serious dispute, with a great deal of evidence on both sides of the issue.

As discussed, *supra,* the burden was on the respondent to prove that Bol had *no* authority, actual or apparent, to enter into the settlement agreement on EPT's behalf.

In other words, the burden of non-persuasion fell on the respondent, *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 470 (Mo.App.1986), such that if the jury was not persuaded one way or the other as to whether Bol had the authority to enter into the agreement on behalf of EPT, it had to find for the appellants. While the respondent, given his burden of proof, was duty bound to offer evidence in support of the proposition that Bol had no authority to enter into the settlement agreement on behalf of EPT, the appellants were not required to offer any evidence on the issue. Nonetheless, the record indicates that in disputing the respondent's position on Bol's agency, the appellants offered an abundance of evidence to establish that, at the very least, Bol had apparent authority to enter into the agreement. In that regard, they introduced at trial the letters from EPT's general counsel to the appellants, sent prior to the execution of the settlement agreement and advising the appellants that all outstanding commissions they owed EPT should be sent to Bol's office in Minnesota. Enclosed in one of those letters were copies of EPT's Certificate of Incorporation and Articles of Incorporation, which listed Bol as the incorporator and sole director of EPT. EPT's general counsel also advised in another letter that Bol was the sole shareholder of EPT and that any correspondence the appellants received from the respondent should be disregarded inasmuch as the respondent was nothing more than a disgruntled former employee of EPT. Also introduced by the appellants was a prior contract for services between EPT and the appellants, which was signed by Bol on EPT's behalf. Given the respondent's burden of proof and the evidence adduced, we cannot say, as the respondent contends, that the evidence was such that even if the agency definitional instruction had been given the outcome of the case would have been the same.

In summary, in submitting the respondent's case to the jury, the issue of Bol's agency in entering the settlement agreement on behalf of EPT was put in dispute, requiring deliberation by the jury thereon. Consequently, the trial court was mandated, pursuant to **Note on Use 2, MAI 18.01 [1991 Revision]**, to give the appropriate MAI instruction, mandated by the Notes on Use of MAI 18.01, defining "scope and course of agency." The trial court's failure to give the instruction was error in that it misdirected, misled and confused the jury on the law as to what it had to find in determining whether Bol acted with or without the necessary authority to bind EPT to the settlement agreement he signed with the appellants. This is so in that it is probable, under the instructions and argument of the case, that the jury believed that it could find for the respondent simply by finding that Bol had no actual authority, versus apparent authority, to enter into the settlement agreement on EPT's behalf. This resulted in prejudice to the appellants' case in that had the jury been aware of the fact that under the applicable law it could find for the appellants on the issue of Bol's authority if it found he had apparent authority to enter into the agreement, there is reason to believe that the outcome of the case may have been different. Because we find error and resulting prejudice in the trial court's failure to give the appellants' proffered instruction defining "scope and course of agency," we must reverse and remand for a new trial.

## II.

In Point I, the appellants claim that the trial court erred in failing to grant their motion for directed verdict for the respondent's failure to make a submissible case

on the issue of Bol's agency because the evidence was undisputed that he had the requisite authority to bind EPT by the settlement agreement. As we discuss in our analysis and disposition of Point II, the issue of Bol's agency was in dispute at trial. Thus, in ruling as we do in Point II, we necessarily must deny the appellants' claim in Point I.

As to Point III, in which the appellants claim that the trial court erred in sustaining the respondent's objection to its closing argument concerning the applicable law as to the issue of Bol's agency, it essentially presents the same issue as Point II, such that the claim in Point III is now moot. *Thruston v. Jefferson City School Dist.*, 95 S.W.3d 131, 134 (Mo.App. 2003) (holding that when an event occurs that makes a court's decision unnecessary the issue or case is moot). And, as to the appellants' claim in its remaining point, Point IV, in which they claim that the trial court erred in failing to reduce the judgment against them, giving them credit for the $375,000 already paid to EPT in settlement, it too is moot in that given our disposition of Point II, there is no longer a judgment against which to credit the settlement payment.

### Conclusion

The judgment of the circuit court for the respondent on his breach of contract claims against the appellants, awarding him $925,073.10 and $1,264,454.97 against IE and TFN, respectively, is reversed and the cause remanded for a new trial in accordance with this opinion.

SMART, P.J., and HOLLIGER, J., concur.