Dean ALEXANDER, Appellant,

v.

Tom CHANDLER, Defendant,

ABS Global, Inc., Respondent.

No. WD 65253.

Missouri Court of Appeals, Western District.

Dec. 6, 2005.

Jeffery Thomas Adams, Clinton, for appellant.

Larry James Tyrl, Kansas City, for respondent.

RONALD R. HOLLIGER, Judge.

Dean Alexander ("Alexander") appeals from a grant of summary judgment in favor of ABS Global, Inc. ("ABS") on his breach of contract claim asserting that

Tom Chandler ("Chandler") was the agent of ABS. The trial court found that there was no actual agency relationship between Chandler and ABS and granted summary judgment on Alexander's claim as to ABS. We reverse and remand because there was a genuine issue of material fact as to whether Chandler was the apparent agent of ABS.

## Facts

Alexander breeds and sells commercial cattle. As part of his business, he maintains an amount of bull semen in supercooled nitrogen tanks to be used for impregnating cows. Chandler is an independent salesman for ABS and sells bull semen for the company in a defined territory to individuals like Alexander. Alexander, however, never purchased bull semen from ABS.

Chandler, individually, is also in the nitrogen supply business. In 2002, Alexander entered into an oral contract with Chandler for the supply of nitrogen for his semen storage tanks. Under the agreement, Chandler would supply nitrogen to Alexander's tanks in exchange for a fee. ABS was not in the nitrogen supply business at the time, but did allow Chandler to use company owned nitrogen tanks carrying the ABS logo to service Alexander's tanks. Additionally, Chandler used other items containing the ABS logo in his dealings with Alexander, including calendars and billing slips. Chandler also sent Alexander postcards and gave out business cards with the ABS label that identified Chandler as an "ABS Representative."

Sometime after the contract was formed, one of Alexander's tanks was not filled properly. Consequently, the temperature in the tank rose too high and the bull semen contained in that tank were rendered unusable. Alexander then filed a lawsuit against Chandler and ABS alleging breach of contract and claiming that Chandler was the actual and/or apparent agent of ABS. Alexander asserted that ABS knowingly permitted Chandler to represent himself as the agent of ABS, acting on the company's behalf, and that Alexander reasonably relied on those representations to his detriment.

The trial court granted ABS' motion for summary judgment as to the claim against the company finding no agency relationship between ABS and Chandler. The court designated its judgment as a final and appealable judgment finding no just reason for further delay. Alexander now appeals.

## Standard of Review

Our review of a grant of a motion for summary judgment is *de novo;* the trial court's decision will be upheld if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376–77 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id* at 376.

## Discussion

Alexander claimed in his petition that he had a contract with Chandler that Chandler was to keep his nitrogen tank full in exchange for a yearly fee. Alexander's petition alleged that Chandler negligently failed to keep the tank full in violation of the contract resulting in the destruction of the semen contained in the tank. Additionally, the petition alleged that Chandler was a servant/employee of ABS, or, in the alternative, Chandler was the apparent agent of ABS. In its motion for summary judgment, ABS claimed that Chandler was

at no time an agent of the company but, rather, an independent contractor and ABS was, therefore, not responsible for his actions.

Alexander did not argue in his response to the motion for summary judgment that Chandler was a servant or employee of ABS. Rather, Alexander rested his theory of agency on the contention that Chandler was cloaked with apparent authority by ABS to enter into contracts on behalf of the company for the delivery of nitrogen. Alexander supported his assertions with facts from the record including: ABS provided Chandler with nitrogen tanks marked with the ABS logo for the purpose of servicing customer needs for nitrogen; Chandler billed Alexander for his services using invoices that displayed the ABS logo; Chandler sent post cards to Alexander that indicated that he was an "ABS Representative"; Chandler gave out business cards identifying himself as an "ABS Representative"; Chandler gave out calendars marked with his name and the ABS logo.

Apparent authority results from a direct communication from the principal to a third party causing that third party to reasonably believe that a person has authority to act for the principal. *Nichols v. Prudential Ins. Co. of Am.*, 851 S.W.2d 657, 661 (Mo.App.1993). The communication need not be verbal and can constitute a combination of actions by the principal, or manifestations that the principal allows to be made without objection. *Hamilton Hauling, Inc. v. GAF Corp.*, 719 S.W.2d 841, 846 (Mo.App.1986) ("The 'holding out' of the agent's authority by the principal party may be by action or inaction.").

> When a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act on behalf of his principal, the principal is estopped, as against such innocent third person, from denying the agent's authority to perform the act.

*Id.* "Once established, apparent authority is the equivalent of expressly conferred authority as far as third persons are concerned." *Utley Lumber Co. v. Bank of the Bootheel*, 810 S.W.2d 610, 613 (Mo.App. 1991) (*citations omitted*).

As stated, ABS moved for summary judgment alleging that no actual or apparent agency relationship existed. Alexander responded by arguing and asserting facts in support of apparent agency. ABS may establish a right to judgment as a matter of law by showing facts that negate any one of the elements of Alexander's cause of action or that Alexander, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the elements of his claim. *Gauert v. Chris–Leef Gen. Agency, Inc.*, 123 S.W.3d 270, 272 (Mo.App.2003). If ABS can establish a right to judgment as a matter of law, Alexander must demonstrate that one or more of the material facts asserted by ABS as not in dispute is, in fact, genuinely disputed. *Id.* To rely on apparent agency, Alexander must show:

> (1) the [apparent] principal manifested his consent to the exercise of such authority or knowingly permitted the [apparent] agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal.

*Bost v. Clark,* 116 S.W.3d 667, 677 (Mo. App.2003). The trial court entered summary judgment against Alexander finding that he had not produced evidence of an agency relationship between Chandler and ABS. In so concluding, the court relied on its finding that Alexander had not shown that ABS had a "right to control" Chandler, and, therefore, Alexander had failed to reach his burden of establishing an agency relationship. *See Bargfrede v. Am. Income Life Ins. Co.,* 21 S.W.3d 157, 162 (Mo.App.2000) (discussing *respondeat superior* and factors germane to evaluating the existence of a master/servant relationship).

The right to control, however, is not relevant to the issues at hand. As stated, Alexander maintained in his response to the motion for summary judgment that he could make a submissible case on a theory of apparent agency. Such a theory has little to do with whether a master/servant relationship exists but, rather, whether ABS cloaked Chandler with the appearance of authority to perform acts on its behalf as reasonably understood by Alexander. Although the right to control is the paramount issue in determining the existence of a master/servant relationship, such a determination is largely irrelevant to the question of apparent agency. What is relevant are the manifestations about Chandler's capacity as an "ABS representative" that were made by ABS or allowed by ABS without objection. *See Hamilton,* 719 S.W.2d at 846.

■ The fact that the trial court used the wrong rationale in granting summary judgment does not require reversal, however, if the judgment can be sustained on any other theory. *Auto Owners (Mut.) Ins. Co. v. Sugar Creek Mem'l Post No. 3976,* 123 S.W.3d 183, 190 (Mo.App.2003). Accordingly, we evaluate the evidence *de novo* applying the proper elements of ap-

parent agency to determine whether there is any genuine issue as to its existence on the undisputed facts of this case.

■ The three elements required to make a prima facie showing of apparent authority stated above can be reduced to: (1) consent by the principal to the exercise of the authority; (2) good faith reliance by a third party; and (3) damage sustained. The core issue of this dispute revolves around the issue of consent; that is, did ABS consent to Chandler asserting apparent authority to contract on the company's behalf or knowingly permit him to do so?

■ In his response to the motion for summary judgment, Alexander alleged that ABS, by acts or conscious omissions, led him to believe that Chandler was acting on the behalf of ABS in contracting with him to deliver nitrogen. Alexander supported these assertions by referring to facts from the pleadings and discovery including the following: ABS provided Chandler with nitrogen tanks marked with the ABS logo for the purpose of servicing customer needs for nitrogen; Chandler billed Alexander for his services using invoices that also displayed the ABS logo; Chandler sent post cards to Alexander indicating that Chandler was an "ABS Representative"; Chandler gave out calendars to individuals, including Alexander, bearing the ABS logo and Chandler's name; Chandler handed out business cards indicating that he was an "ABS Representative."

■ Although these facts are not in dispute, the record conflicts as to which of those representations ABS consented to or knowingly permitted. This is of obvious importance because apparent authority is created by some "act or failure to act" on behalf of the alleged principal and not of the agent. *Hamilton,* 719 S.W.2d at 848. Any determination of apparent authority will always turn upon the particular facts of each case; there is no set rule establish-

ing when an inference of agency is proper. *Corrington Park Assocs., L.L.C. v. Barefoot, Inc.,* 983 S.W.2d 210, 212–13 (Mo.App. 1999). Precisely what ABS consented to with regard to the representations made by Chandler is of tremendous importance in determining whether, as a matter of law, Chandler was not cloaked with apparent authority by ABS. For instance, some case law indicates that the mere possession of invoices bearing the name of the alleged principal is insufficient to establish apparent authority. *Dudley v. Dumont,* 526 S.W.2d 839, 846 (Mo.App.1975). The flip side here is that Chandler was in possession of much more material displaying the ABS logo than a few invoices.

It is clear that ABS consented to the use of the ABS calendars and the tanks brandishing the ABS logo because it provided both to Chandler. With regard to the invoices, Chandler testified at his deposition that previous managers within the company were aware that he was using the ABS logo on the invoices and did not object. However, Chandler's immediate manager testified that he was not aware that Chandler was using the invoices and business cards bearing the ABS logo.[1]

In sum, the evidence is clear as to what kind of manifestations were made to Alexander attributing apparent authority to Chandler. The evidence conflicts, however, as to whether ABS acquiesced or consented to the making of all or merely some of those manifestations. Such evidence is vital to the root of apparent authority— that the apparent principal consented to representations of authority upon which a third party reasonably relied. To be sure, agency will not be presumed and Alexander bears the burden of proving the agency relationship. *Corrington,* 983 S.W.2d at

213. Alexander, however, has provided evidence that ABS knowingly consented to some of the representations made by Chandler and the evidence conflicts as to some of the others.

Recalling the fact that we are required to review the record in the light most favorable to Alexander, under these circumstances we believe that the grant of summary judgment was improper. The discrepancies in the record as to how many of Chandler's representations to Alexander that ABS impliedly consented to preclude a conclusion that, as a matter of law, apparent authority did not exist. A genuine issue exists when the record contains competent materials that show "two plausible, but contradictory, accounts of the essential facts." *ITT,* 854 S.W.2d at 382; *Deer Run Prop. Owners Ass'n v. Bedell,* 52 S.W.3d 14, 17 (Mo.App.2001). "[W]e exercise great caution in affirming a summary judgment because the procedure implicates the denial of due process by denying an opposing party his day in court." *D'Arcy Assocs., Inc. v. K.P.M.G. Peat Marwick,* 129 S.W.3d 25, 31 (Mo.App. 2004). The facts upon which ABS relied in their motion do not establish as a matter of law that apparent authority did not exist, and, accordingly, the trial court erred in granting the motion for summary judgment.

The case is reversed and remanded for further proceedings.

PAUL M. SPINDEN, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.

---

1. Chandler's use of business cards declaring him to be an "ABS Representative" appear to be immaterial to the core issue of apparent authority because Alexander testified that he never saw them. *See Bost,* 116 S.W.3d at 677 (person relying on the exercise of authority must *know of the facts . . .* ) (emphasis added).