The BUSINESS BANK OF SAINT
LOUIS, Appellant,

v.

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,
Respondent.

No. ED 93569.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 4, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 8, 2010.

Application for Transfer Denied
Aug. 31, 2010.

Steven Schwartz, Matthew G. Koehker, Brown & James, P.C., St. Louis, MO, for Appellant.

Robert D. Blitz, Ellen Dunne, Colleen C. Jones, Douglas A. Stockenberg, St. Louis, MO, for Respondent.

ROY L. RICHTER, Judge.

The Business Bank of St. Louis ("Bank") appeals the trial court's judgment granting Old Republic National Title Insurance Company's ("Old Republic") motion for summary judgment. Finding no error, we affirm.

## I. BACKGROUND

This case concerns the scope of an agency agreement between two title companies, Old Republic and Hillsboro Title Company ("Hillsboro"). Old Republic is a Minnesota corporation with offices in Clayton, Missouri, and Hillsboro is a Missouri corporation with its principal place of business in Hillsboro, Missouri. Both companies are in the business of issuing title commitments and title insurance policies. Old Republic issues commitments and policies for real estate in several states, including Missouri. On January 28, 1994, Old Republic and Hillsboro entered into an agency agreement titled "Agreement for Appointment of Policy Issuing Agent for Old Republic National Title Insurance Company" ("Agency Agreement"). The Agency Agreement appointed Hillsboro as a title policy-issuing agent for Old Republic.

The disagreement at issue stems from a different agreement between Hillsboro and three other parties, including Bank, titled "Construction and Disbursing Escrow Agreement" ("Construction Escrow Agreement"). The Construction Escrow Agreement relates to the construction of a subdivision on property for which Hillsboro, as Old Republic's agent, issued a title insurance commitment.[1] Bank ultimately sued Old Republic and Hillsboro for Hillsboro's

---

1. As will be discussed, no title insurance policy was issued on the property.

acts in connection with the Construction Escrow Agreement on the theory that Hillsboro was acting as Old Republic's express and/or apparent agent when it committed the acts in question.

Since this case concerns the scope of the Agency Agreement between Old Republic and Hillsboro, we first set forth some terms of that Agreement. Section I of Hillsboro's and Old Republic's Agency Agreement is titled "Appointment of Agent," and provides as follows:

[Old Republic] appoints [Hillsboro] a policy issuing agent for [Old Republic] for the purpose of signing, countersigning and issuing commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements and other agreements under which [Old Republic] assumes liability for the condition of title ... covering real estate located in the following county or counties: Franklin, Jefferson, Ste. Genevieve, Washington & St. Francois in the state of Missouri.

Section III is titled "Duties of Agent" and provides, in pertinent part, that Hillsboro shall:

A. Receive and process applications for title insurance and issue policies in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of [Old Republic], as well as in conformity with state and local laws and practice;

B. Maintain and preserve, in a separate file on each order for title insurance placed with [Hillsboro], a copy of the title insurance forms issued in that transaction, and all supporting documents on which the determination of insurability is made, including, but not limited to, affidavits, lien waivers, survey plats, searches, examinations and work sheets;

C. Maintain an accurate register of title insurance forms;

D. Assume full responsibility for the collection of all premiums, fees and charges attributable to the issuance of title insurance forms hereunder;

E. Keep safely in an account separate from [Hillsboro's] operating accounts all funds received by [Hillsboro] from any source in connection with transactions which [Old Republic's] policy is involved, disburse said funds only for the purposes for which the same were entrusted, and reconcile all such accounts not less frequently than monthly....

Section VII, titled "Responsibility for Loss," provides that Hillsboro shall be responsible, in part, for:

D. The improper closing or attempted closing by [Hillsboro] including but not limited to ... (2) failure to disburse properly or close in accordance with escrow or closing instructions, and/or (3) misappropriation of escrow or closing funds by [Hillsboro], its officers or employees....

In addition to the Agency Agreement, Old Republic provided its policy-issuing agents—including Hillsboro—a document titled "Escrow, Closing and Settlement Services." The document stated, in part, that "[e]scrow services as used in this article refers to a wide variety of services which are related to closing real estate transactions ... and disbursing construction loan proceeds." It goes on to state that:

Providing escrow services can be a significant benefit to the title insurance agency business, however, it can expose the agent and the Company to significant losses, both within and beyond the

coverage of the title insurance policy. Agents are therefore not authorized to close transactions on behalf of the Company without specific authorization to do so.... Any losses suffered by the Company as a result of any negligent or unauthorized closing services will be the responsibility of the Agent.

On September 8, 2004, Hillsboro entered into the Construction Escrow Agreement that is the source of this litigation. Pursuant to the Construction Escrow Agreement, Hillsboro agreed to act as escrowee with respect to a construction project ("the Project"). The letterhead on the Construction Escrow Agreement displayed only Hillsboro's name and address. The other parties to the Agreement were Beaker LLC, the Project's owner, Lawless Homes, Inc. the contractor, and Bank, the mortgagee and financier. Bank deposited approximately $4.2 million with Hillsboro, about $2.4 million of which was allocated for construction costs. The contract provided that Hillsboro would receive $12,430 for its disbursing fee. Old Republic was not a signatory to the Construction Escrow Agreement.

Hillsboro also issued a title insurance commitment for the Project on September 13, 2004, five days after it entered into the Construction Escrow Agreement. The commitment displayed Hillsboro's name and address at the top and also stated: "Agent for: Old Republic National Title Insurance Company." Hillsboro ultimately did not issue a title insurance policy on the Project because the construction disbursing process, the subject of the Construction Escrow Agreement, was never completed.

On July 5, 2007, Bank filed a four-count petition against Hillsboro and Old Republic based on Hillsboro's performance of its duties under the Construction Escrow Agreement. The petition alleged that Hillsboro had disbursed funds in violation of the Construction Escrow Agreement, and that as a result Lawless Homes and others were paid for work that was not performed. Consequently, Bank alleged that its collateral was worth less than its construction loans. Bank charged Hillsboro and Old Republic with negligence, breach of fiduciary duty, breach of contract, and suit on a note.

The petition premised Old Republic's liability on an agency theory, both express and apparent. Bank alleged that Hillsboro had express authority to disburse escrow funds, and that Old Republic knowingly caused or permitted Hillsboro to hold itself out to the public as Old Republic's agent in the construction loan disbursal capacity. Old Republic filed a motion for summary judgment and alleged that Hillsboro was neither its express nor apparent agent with respect to the Construction Escrow Agreement.

The trial court granted Old Republic's motion for summary judgment. It held that Hillsboro was Old Republic's agent "for the limited purpose of issuing title insurance commitments and policies under which Old Republic 'assumes liability for the condition of title [to real estate].'" To the extent that the Agency Agreement permitted Hillsboro to engage in escrow services, the trial court found them limited to those "necessary and incidental to the issuance of title commitments and policies." Bank appeals.

## II. DISCUSSION

Appellate review of summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment has been entered. *Id.* "Summary judgment is appropriate where there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law." *Schwab v. Nat'l Dealers Warranty, Inc.,* 298 S.W.3d 87, 89 (Mo.App. E.D.2009).

For ease of analysis, we address the Bank's first two points together. In its first and second points on appeal, the Bank argues that the trial court erred in entering summary judgment because there is a genuine issue of material fact as to whether an express or an implied agency relationship existed between Old Republic and Hillsboro. We disagree.

■ Whether a principal-agent relationship exists is generally a question of fact. *Ritter v. BJC Barnes Jewish Christian Health Sys.,* 987 S.W.2d 377, 384 (Mo.App. E.D.1999). "However, this relationship is a question of law for the court to determine when the material facts are not in dispute, and 'only one reasonable conclusion can be drawn from the material facts.'" *Id.* (quoting *Johnson v. Bi–State Dev. Agency,* 793 S.W.2d 864, 867 (Mo. banc 1990)).

■ There are three requisites to establishing an agency relationship: (1) the agent holds the power to alter legal relations between the principal and third parties; (2) the agent is a fiduciary with respect to matters within the scope of agency; and (3) the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent. *State ex rel. Ford Motor Co. v. Bacon,* 63 S.W.3d 641, 642 (Mo. banc 2002); *Bluehaven Funding, LLC v. First Am. Title Ins. Co.,* No. 4:06CV1425SNLJ, 2009 WL 1421207, at *7 (E.D.Mo. May 20, 2009).

■ Old Republic and Hillsboro both acknowledge that Hillsboro is Old Republic's agent for the purpose of issuing title insurance commitments and policies. As Hillsboro's principal, Old Republic is responsible for Hillsboro's acts and agreements that are within Hillsboro's actual or apparent authority. *Nichols v. Prudential Ins. Co. of Am.,* 851 S.W.2d 657, 661 (Mo. App. E.D.1993). Actual authority may be express or implied. *Id.* Express authority exists when the principal explicitly tells the agent what to do. *Id.*

■ The Agency Agreement appointed Hillsboro as a policy issuing agent specifically "for the purpose of signing, countersigning and issuing commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements and other agreements under which [Old Republic] assumes liability for the condition of title. . . ." There is no evidence in the record that Old Republic explicitly told or authorized Hillsboro to act as escrowee pursuant to the Construction Escrow Agreement. Moreover, Construction loan disbursal is not related to the condition of title, and therefore is outside the scope of the Agency Agreement.

The Bank then cites the fact that Old Republic expressly authorized Hillsboro to perform escrow services in connection with transactions where Hillsboro issued title insurance commitments on behalf of Old Republic. Further, the Bank asserts that the Construction Escrow Agreement was intimately linked to a transaction where Hillsboro issued a title insurance commitment for Old Republic. Therefore, Bank asserts that Hillsboro was acting as Old Republic's express agent with respect to the Construction Disbursal Agreement.

The Bank is correct in that Old Republic granted Hillsboro the authority to conduct escrow services in connection with its issuance of title insurance commitments. Section E. under "Duties of Agent" states that Hillsboro shall "[k]eep safely in an account . . . all funds received by [Hillsboro] from any source in connection with transactions which [Old Republic's] policy is involved . . . ." The Bank fails to recognize,

however, that performing escrow duties in connection with issuing title insurance commitments is separate and distinct from acting as an escrowee pursuant to a construction loan disbursal.

A recent decision from the Eastern District of Missouri illustrates this point. In *Bluehaven Funding, LLC v. First Am. Title Ins. Co.*, First American Title and Capital Title entered into an agency agreement in 1999 whereby First American appointed Capital Title as its agent for the limited purpose of issuing title insurance policies. 2009 WL 1421207, at *2, 3. In 2002, several plaintiffs placed $2.4 million in a construction loan escrow account with Capital Title. *Id.* at *4. When the funds were misappropriated, the plaintiffs attempted to hold First American Title liable on the theory that Capital Title had acted as First American Title's agent in misappropriating the funds. *Id.* The District Court rejected the plaintiffs' agency theory. It stated that:

> Ultimately, the transactions that are the subject of plaintiffs' complaint cannot be said to be within the scope of authority granted by [First American Title] to Capital Title, whether actual or apparent, because none of the transactions involved the procurement or issuance of title insurance from [First American Title]. Although Capital Title was indeed the agent for [First American Title], the transactions here were "on the side."

*Id.* at *9.[2]

Like Capital Title's acts in *Bluehaven*, Hillsboro's transactions and duties under the Construction Escrow Agreement were "on the side." Old Republic was not a party to the Construction Escrow Agreement and did not have the right to control Hillsboro's actions with respect to that Agreement. Also as in *Bluehaven*, the

Agency Agreement between Hillsboro and Old Republic expressly states that Hillsboro is Old Republic's agent for the limited purpose of issuing title commitments and policies.

Bank again attempts to argue that the parties' course of conduct shows that escrow services are a necessary and incidental aspect of carrying out Hillsboro's express authority to issue title commitments and policies. As already discussed, the Agency Agreement permitted Hillsboro to perform only escrow services that related to issuing title insurance commitments and policies. The Construction Escrow Agreement, in contrast, governs the disbursal of funds for a construction project and clearly is not related to title insurance.

Bank also points to Old Republic's ability to audit Hillsboro's escrow records, including construction disbursement escrows, as proof that Hillsboro acted as Old Republic's express agent. Section XL A. of the Agency Agreement states that "[Hillsboro] does hereby grant [Old Republic] the right at any reasonable time or times to audit all financial and business records relating to any escrow closing or settlement functions conducted by [Hillsboro]." The record also contains evidence that Old Republic audited Hillsboro's escrow records, including several construction disbursement files, and issued Hillsboro "comments and recommendations" based on the auditor's findings.

We do not believe that Old Republic's periodic audits establish the requisite control for an agency relationship. A full reading of Section XI of the Agency Agreement, which provides for the periodic audits, is instructive on this issue:

---

**2.** On appeal to the Eighth Circuit, that Court affirmed the District Court's "ultimate conclusion that Capital Title lacked such authori-

ty." *Bluehaven Funding, LLC v. First American Title Ins. Co.*, 594 F.3d 1055, 1059 (8th Cir.2010).

[Hillsboro] hereby agrees and authorizes [Old Republic] to conduct, at [Hillsboro's] option:

Periodic audits of [Hillsboro's] policy inventory, title insurance files and any material, files, records or accounts, including financial and business records, relating to the issuance of title insurance forms. In addition, *although it is agreed that any escrow or settlement business responsibility is strictly that of [Hillsboro]*, it is recognized that because [Old Republic] issues insured closing services letters which cause [Old Republic] to indemnify third parties against loss resulting from [Hillsboro's] errors, omissions or misconduct (*and for which [Hillsboro] acknowledges total liability* ), [Hillsboro] does hereby grant [Old Republic] the right at any reasonable time or times to audit all financial and business records relating to any escrow closing or settlement functions conducted by [Hillsboro].

(emphasis added).

Primarily, this section explicitly states that Hillsboro assumes responsibility for any escrow or settlement business. Further, it recognizes that Hillsboro provides escrow services that are separate and distinct from those it conducts on Old Republic's behalf in conjunction with issuing its title insurance commitments. In acknowledging these separate escrow services, the Agreement affords Old Republic a limited right to audit them in order to protect its interests in issuing closing services letters. This limited right to audit all of Hillsboro's escrow files in no way equals the requisite level of control for an agency relationship.

Finally, it is undisputed that Old Republic was not a party to the Construction Escrow Agreement. Unlike the title insurance commitment that Hillsboro issued for the Property, the Construction Escrow Agreement does not designate Hillsboro as Old Republic's agent. Moreover, Old Republic did not receive a fee or any portion of a fee for Hillsboro's services under the Construction Escrow Agreement. For all of these reasons, Old Republic did not grant Hillsboro express authority to act as escrowee pursuant to the Construction Escrow Agreement.

■ Similar to its argument regarding express agency, Bank offers a litany of reasons that Hillsboro had implied authority to act as Old Republic's agent with respect to the Construction Escrow Agreement. Among other things, Bank argues that Hillsboro's and Old Republic's course of conduct demonstrates that Old Republic planned for Hillsboro to perform escrow services, and that Old Republic acquiesced to Hillsboro's performing its duties pursuant to the Construction Escrow Agreement. Bank relies on many of the same theories in support of its implied agency argument as in its express agency one.

"Implied authority consists of those powers incidental and necessary to carry out the express authority." *Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc.,* 220 S.W.3d 350, 355 (Mo.App. S.D.2007) (quoting *Nichols v. Prudential Ins. Co. of America,* 851 S.W.2d 657, 661 (Mo.App. E.D.1993)). "Implied powers, like any powers, must be bottomed on some act or acquiescence of the principal, express or implied." *Dudley v. Dumont,* 526 S.W.2d 839, 844 (Mo.App. E.D.1975).

Hillsboro has not produced any evidence from which a reasonable juror could conclude that its escrow duties under the Construction Escrow Agreement were necessary and incidental to carrying out its express authority to sell title insurance commitments. *See Bluehaven,* 594 F.3d at 1059. We have already discussed why Hillsboro's duties as escrowee for a construction loan disbursal constitute side duties, and are not necessary or incidental to the issuance of title insurance commit-

ments. *See Bluehaven,* 2009 WL 1421207, at *9; *see also Nat'l Mortgage Warehouse, LLC v. Bankers First Mortgage Co., Inc.,* 190 F.Supp.2d 774, 779 (D.Md.2002) (stating that a title-issuing agent may wear "two hats," one as an agent to issue title insurance policies and another to conduct closing services; in such cases, "the title insurer is responsible only for the title insurance issued; it cannot be held liable for the agent's participation in related closings or provision of escrow services.").

Again, Hillsboro had express authority only to issue title insurance commitments and policies. Issuing title insurance policies necessitated Hillsboro's performing certain escrow services; for instance, holding a buyer's down payment pending closing. Issuing the title policies did not, however, necessitate Hillsboro's acting as an escrowee pursuant to a construction loan disbursal agreement.

Most importantly, the Bank cannot argue that Hillsboro had express or implied authority to perform services which the "Escrow, Closing and Settlement Services" document expressly excluded from the agency relationship. The document—issued by Old Republic to Hillsboro and all of its title-issuing agents—states as follows:

> Escrow, closing and settlement services ("escrow services") are service lines which may be offered in conjunction with title insurance orders or separately. Escrow services as used in this article refers to a wide variety of services which are related to real estate transactions ... and disbursing construction loan proceeds.... [P]roviding escrow services can be a significant benefit to the title insurance agency business, however, it can expose the agent and the Company to significant losses, both within and beyond the coverage of the title insurance policy. *Agents are therefore not authorized to close transactions on behalf of the Company without specific authorization to do so ....*

(emphasis added). Hillsboro has pointed to no specific authorization from Old Republic to perform construction loan disbursals.

Because Old Republic did not expressly grant Hillsboro the authority to enter into the Construction Escrow Agreement, and because the duties under the Agreement were not necessary and incidental to carrying out its express authority, the Bank's points one and two are denied.

In its third point on appeal, the Bank argues that the trial court erred in entering summary judgment because there was a genuine issue of material fact as to whether an apparent authority relationship existed between Old Republic and Hillsboro.

■ "Apparent authority exists where a principal's manifestations to a third party have created a reasonable belief in the third party that an agent is acting for the principal, or where the principal is fully aware that another is acting as his agent but does nothing to correct the misconception." *The Bar Plan v. Cooper,* 290 S.W.3d 788, 792 (Mo.App. E.D.2009).

■ The Bank asserts that Old Republic created an impression of apparent authority because Old Republic, through Hillsboro, issued a title commitment to the Bank as part of the same construction loan transaction. The Bank also argues that Old Republic created apparent authority simply by allowing Hillsboro to act as its title agent. Hillsboro asserts that it is customary for title agents to perform escrow services, and that Old Republic knew Hillsboro's customers expected Hillsboro to perform them.

■ On September 13, 2004, Hillsboro issued the Bank a title commitment

that clearly indicated it was acting as Old Republic's agent. The Bank, however, received the title commitment five days *after* it had entered into the Construction Escrow Agreement with Hillsboro. In determining the existence and scope of apparent agency, the focus is on a third person. *The Bar Plan*, 290 S.W.3d at 792 (quoting *Barton v. Snellson*, 735 S.W.2d 160, 162 (Mo.App. E.D.1987)). Since Old Republic's name had not come to the Bank's attention when it signed the Construction Escrow Agreement, it could not have believed Hillsboro was acting on Old Republic's behalf at that time. Moreover, "apparent authority is created by the conduct of the principal which causes a third person reasonably to believe that another has the authority to act for the principal." *Nichols*, 851 S.W.2d at 661. With respect to the Construction Escrow Agreement, Old Republic did nothing to convey the impression to the Bank that Hillsboro had authority to act on its behalf. Finally, we have already explained that Hillsboro's permitted escrow services—those conducted in connection with issuing title insurance policies—were separate and distinct from the construction loan escrow services. Point three is denied.

KENNETH M. ROMINES, C.J., and WILLIAM L. SYLER, Sp. J., concur.