**AGRI PROCESS INNOVATIONS, INC., Appellant–Respondent,**

v.

**ENVIROTROL, INC., Respondent–Appellant.**

Nos. WD 72403, WD 72658.

Missouri Court of Appeals, Western District.

April 5, 2011.

Gary J. Barrett, Little Rock, AR, for Appellant–Respondent.

Greg T. Spies and Mikki L. Copeland, Kansas City, MO, for Respondent–Appellant.

Before Division II: KAREN KING MITCHELL, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

KAREN KING MITCHELL, Presiding Judge.

This is an agency case. The issue on appeal is whether the trial court erred in failing to submit to the jury the issue of whether the alleged agent acted within the scope and course of his alleged agency with the defendant. We hold that it did so err and that it therefore correctly granted the defendant's motion for a new trial. Accordingly, we affirm. The issue on cross-appeal is whether the trial court should have granted the defendant's motion for judgment notwithstanding the verdict in that, as a matter of law, the alleged agent lacked the authority to bind the defendant. We hold that a reasonable juror could have found that the alleged agent had apparent authority sufficient to bind the defendant. Accordingly, we affirm.

### Facts and Procedural Background[1]

■ Appellant–Respondent Agri Process Innovations, Inc. ("Agri Process") entered into an agreement with Allen Hoover for installing ceramic insulation on biodiesel fuel tanks. The only aspect of the contract that is relevant to this appeal is whether Respondent–Appellant Envirotrol, Inc. ("Envirotrol") was bound by the agreement.

Representatives of Agri Process testified that, in negotiating the contract, Hoover held himself out as a representative of Envirotrol. Hoover's business cards stat-

---

1. "When presented with the grant of a new trial following a plaintiff's verdict, [courts of appeal] view the evidence and all inferences therefrom in the light most favorable to the plaintiff." *Lindquist v. Scott Radiological Grp., Inc.*, 168 S.W.3d 635, 643–44 (Mo.App. E.D.2005). Likewise, when reviewing the court's ruling on a judgment notwithstanding the verdict, we review the facts in the light most favorable to the verdict, *All Am. Painting, LLC v. Fin. Solutions & Assocs.*, 315 S.W.3d 719, 720 (Mo. banc 2010), which, in this case, was for the plaintiff.

ed that he was an employee of Envirotrol. Envirotrol's website listed Hoover as a technical consultant. When Agri Process began having problems with the insulation, it contacted Envirotrol, and Envirotrol's president travelled to the site to review the problem. Envirotrol's president stated that Envirotrol would correct the problem. Envirotrol paid Hoover $136,593.81 in 2006, the year before he entered into the contract with Agri Process.

Hoover himself testified that he had not been representing Envirotrol in the subject transaction. Rather, he testified that he had represented a company called Thermal Corrosion Solutions and that Agri Process knew that Thermal Corrosion Solutions was the contracting party. Thermal Corrosion Solutions is a sole proprietorship, and Hoover is its owner, operator, and sole employee. Thermal Corrosion Solutions subcontracted the work on Agri Process's tanks to a separate company called Mid South Thermal Coatings. Chris Bennett of Mid South Thermal Coatings purchased product from Envirotrol to use on the Agri Process job. Hoover directed Agri Process to submit payment for the project to Thermal Corrosion Solutions, which Agri Process did. Agri Process's personnel testified that they believed that Thermal Corrosion Solutions was affiliated with Envirotrol.

Agri Process alleged that only three instead of eight coats of insulation were installed on the tanks, resulting in moisture being trapped and inconsistency in the thickness of the insulation. The defective application of the insulation allegedly caused Agri Process damages. Agri Process sued Envirotrol for breach of contract and pled that Hoover, in entering into and performing under the contract, had acted as Envirotrol's agent.

In the course of discovery, Envirotrol propounded the following request for ad-

mission to Agri Process: "The contract upon which Plaintiff's claim is based contained no promise by Envirotrol." Agri Process responded: "Admit."

The circuit court held a jury trial on Agri Process's claims. Over Envirotrol's objection, the court submitted the following instruction to the jury:

> Your verdict must be for Agri Process Innovation, Inc. if you believe:
>
> First, Agri Process Innovation, Inc. and Envirotrol, Inc. entered into an agreement . . . and
>
> Second, Agri Process Innovation, Inc. performed its agreement, and
>
> Third, Envirotrol, Inc. failed to perform its agreement, and
>
> Fourth Agri Process Innovation, Inc. was thereby damaged.

Envirotrol objected to the instruction because it did not require the jury to find that Hoover acted within the scope and course of his agency with Envirotrol. The trial court overruled the objection, stating that "it's the discretion of the Court to make the apparent agency [instruction] part of and include it on the verdict director or not." The court stated further that, if it included within the verdict director a required finding that Hoover acted as the agent of Envirotrol, it would be "adding additional elements into the burden of proof placed upon the plaintiff which are simply not required by Missouri law."

The court did, however, submit to the jury an instruction defining "scope and course of agency":

> Acts of Allen Hoover were within the "scope and course of agency" as that phrase is used in these instructions .if:
>
> First, the conduct of Allen Hoover was such that an ordinarily careful person would believe that Allen Hoover had

authority to perform such acts on behalf of Envirotrol, Inc., and

Second, Envirotrol, Inc. knew or had reason to know of such conduct and allowed such conduct, and

Third, Agri Process Innovations, Inc. reasonably relied on such conduct of Allen Hoover at the time of the transaction mentioned in the evidence.

The jury returned a verdict for Agri Process. Envirotrol filed a motion for a new trial, or, in the alternative, for judgment notwithstanding the verdict. In its motion for a new trial, Envirotrol argued that the court improperly submitted the verdict director in that the instruction did not require a finding that Hoover acted within the scope and course of his agency with Envirotrol. In its motion for judgment notwithstanding the verdict, Envirotrol argued that a verdict should be entered in its favor because Agri Process judicially admitted that Envirotrol had made no promise.

In its judgment, the trial court granted the motion for a new trial and denied (*sub silentio*) the motion for judgment notwithstanding the verdict.[2] Agri Process appeals the former part of the judgment; Envirotrol cross-appeals the latter.

## Standard of Review

 "When a motion for new trial is granted because of prejudicial error in the instructions, the question presented on appeal is [a] question of law." *Luyties Pharmacal Co. v. Frederic Co.*, 716 S.W.2d 831, 834 (Mo.App. E.D.1986). As always, we review questions of law *de novo*. *Smith v. Am. Family Mut. Ins. Co.*, 289

S.W.3d 675, 680–81 (Mo.App. W.D.2009). In reviewing the denial of a motion for judgment notwithstanding a verdict, the question is whether the plaintiff made a submissible case. *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007). Whether the plaintiff made a submissible case is also a question of law. *Taylor v. F.W. Woolworth Co.*, 641 S.W.2d 108, 111 (Mo. banc 1982).

> A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. In determining whether the evidence was sufficient to support the jury's verdict, the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict. [An appellate court] will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. Accordingly, a motion for JNOV is properly granted when the motion identifies at least one element of the plaintiff's case that is not supported by the evidence.

*Clevenger*, 237 S.W.3d at 590 (internal citation omitted).

## Legal Analysis

### I. Agri Process's Appeal

Agri Process argues that the trial court erred in granting the motion for a new trial in that the verdict director was sufficient to submit all necessary issues for the jury to decide. We disagree.

---

**2.** By not ruling on the motion for judgment notwithstanding the verdict within ninety days after the last authorized post-trial motion was filed, the trial court denied it. Rule 78.06. This is not a case where the post-trial motion requires a ruling on the weight of the evidence, and therefore we need not remand for an explicit ruling on the motion for judgment notwithstanding the verdict. *Cf. Taylor v. F.W. Woolworth Co.*, 641 S.W.2d 108, 110–11 (Mo. banc 1982).

"An instruction authorizing a verdict must require a finding of all ultimate facts necessary to sustain the verdict except those which have been unmistak[ab]ly conceded by both parties." *Young v. Kan. City Power & Light Co.*, 773 S.W.2d 120, 125 (Mo.App. W.D.1989). It is error to submit an instruction that assumes or omits a controverted fact that is essential to the plaintiff's claim. *Id.* The party claiming instructional error has the burden to show that the instruction prejudiced it, in that the instruction " 'misdirected, misled, or confused the jury.' " *Kearbey v. Wichita Se. Kan.*, 240 S.W.3d 175, 183 (Mo.App. W.D.2007) (quoting *Martens v. White*, 195 S.W.3d 548, 557 (Mo.App. S.D.2006)). In determining whether the jury was misdirected, misled, or confused, we must decide whether, from reading the instruction, an average juror would understand the applicable law. *Rice v. Bol*, 116 S.W.3d 599, 606 (Mo.App. W.D.2003). When a Missouri Approved Instruction applies, the court shall give it if requested to do so. Rule 70.02(b). We presume that the failure to give an applicable Missouri Approved Instruction caused prejudice. *Rice*, 116 S.W.3d at 610. However, "it is not error for the trial court to fail to instruct on a factual issue or proof element on which there is no serious dispute." *Id.* at 613.

### a. The erroneous instruction

Here, whether Hoover acted within the scope and course of his alleged agency with Envirotrol was an "ultimate fact[ ] necessary to sustain the verdict." *See Young*, 773 S.W.2d at 125. Agri Process's claim was for breach of contract. In order for Agri Process to have recovered against Envirotrol on that claim, it had to prove that Envirotrol had, in fact, entered into the subject contract. *See Volker Court, LLC v. Santa Fe Apts., LLC,* 130 S.W.3d 607, 611 (Mo.App. W.D.2004); MAI 26.06 (dealing with breach of a bilateral contract). Moreover, there is no dispute that the *only* way Agri Process could have proved that Envirotrol entered into the contract was through an agency theory.

A principal can be held liable for breach of contract when its agent entered into the contract within the scope of his apparent authority.[3] *Alexander v. Chandler,* 179 S.W.3d 385, 388 (Mo.App. W.D.2005). An agent acts with apparent authority sufficient to bind the principal when:

> (1) the [apparent] principal manifested his consent to the exercise of such authority or knowingly permitted the [apparent] agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal.

*Id.* (quoting *Bost v. Clark,* 116 S.W.3d 667, 677 (Mo.App. W.D.2003)). An issue in this case was whether Envirotrol "manifested [its] consent to [Hoover's] exercise of . . . authority [to enter the subject contract] or knowingly permitted [Hoover] to assume the exercise of such authority," *see id.*; and it is undisputed that Agri Process could not have recovered absent a finding in its favor on that issue. Thus, the agency issue was an "ultimate" and "necessary" one.

---

**3.** An agent can also bind his principal when he acts pursuant to actual authority (whether it be express or implied), *Bus. Bank of St.* *Louis v. Old Republic Nat'l Title Ins. Co.,* 322 S.W.3d 548, 552 (Mo.App. E.D.2010), but this case concerns only apparent authority.

Moreover, this is not a case where there was "no serious dispute" regarding the agency issue, nor is it one where the trial court could have properly decided the issue as a matter of law. *Cf. Rice*, 116 S.W.3d at 613 (noting that an agency instruction need not be given when there is no serious dispute regarding the issue); *and Galemore Motor Co. v. State Farm Mut. Auto. Ins. Co.*, 513 S.W.2d 161, 167 (Mo.App.1974) (noting that an agency instruction need not be given when the issue can be decided as a matter of law). Indeed, the crux of the case was whether Hoover had acted as Envirotrol's agent, and the parties both presented ample evidence on the issue. Agri Process adduced that Hoover had held himself out as a representative of Envirotrol; that Hoover's business cards bore Envirotrol's name; that Envirotrol listed Hoover on its website as a technical consultant; and that Envirotrol's president responded to Agri Process's complaints and initially promised to address them. Envirotrol adduced evidence [4] that would cut the other way: Hoover testified that he had represented Thermal Corrosion Solutions and that he had made Agri Process aware of that; Hoover directed Agri Process to pay Thermal Corrosion Solutions; and Agri Process did pay Thermal Corrosion Solutions for the work performed. Thus, the agency issue was seriously disputed, and the jury could have permissibly found *either* that Envirotrol "manifested [its] consent to [Hoover's] exercise of . . . authority [to enter the subject contract] or knowingly permitted [Hoover] to assume the exercise of such authority" *or* that Envirotrol had not done so. *See Alexander*, 179 S.W.3d at 388.

The trial court did not submit the agency issue as required by Missouri law. Missouri Approved Instruction 18.01 provides that, when agency is in issue, the verdict director shall be modified to submit to the jury the question of whether the agent acted within the "scope and course of his [agency]." Though the example given by MAI 18.01 relates to a negligence case, the instruction also applies to a breach of contract case when agency is in issue. *Rice*, 116 S.W.3d at 609–10. Further, when agency is at issue, "scope and course of agency" shall be defined. *Id.*; *see also* MAI 13.07 (relating to apparent authority). Defining "scope and course of agency" is not all that the trial court must do: it must also actually submit the agency question in a verdict director, *Galemore*, 513 S.W.2d at 167–68; i.e., it must require the jury to find that the alleged agent acted within the scope and course of his agency. Accordingly, in this case, (1) the verdict director should have been modified to submit the issue of whether Hoover acted within the scope and course of his agency with Envirotrol; and (2) the term "scope and course of agency" should have been specifically defined. *See Rice*, 116 S.W.3d at 609–10; *Galemore*, 513 S.W.2d at 167–68; MAI 18.01; MAI 13.07(1) & (2).

Here, the jury instructions met one of these requirements but not both. The term "scope and course of agency" was defined in a separate instruction, but the question of *whether* Hoover acted within the scope and course of his alleged agency with Envirotrol was not actually submitted to the jury in the verdict director. Defining a necessary term does not constitute submission of a necessary issue, *Galemore*, 513 S.W.2d at 167–68; and, as explained above, Missouri law requires both.

■■■ Since the trial court failed to follow MAI 18.01, we presume that the error

---

4. Envirotrol presented no affirmative evidence but rather elicited evidence through

cross-examination.

caused prejudice. *See Rice,* 116 S.W.3d at 610. Moreover, even if such a presumption did not apply, Envirotrol showed prejudice in that the central factual issue of the case (and one that a reasonable factfinder could have decided either way) was never decided by the jury. The jury was also misdirected, misled, or confused because, from reading the verdict director, an average juror would have thought that the jury was not required to find that Envirotrol "manifested consent" to or "knowingly permitted" Hoover's exercise of contractual authority on its behalf. *See id.* at 606 (articulating standard for prejudice from instructional error); *see also Alexander,* 179 S.W.3d at 388 (articulating standard for apparent authority).

**b. Agri Process's attempts to show that prejudice did not occur**

■■■ Agri Process argues that the trial court's error did not cause prejudice. First, it argues that the law was clear to the jurors because the court defined "scope and course of agency" in a separate instruction. But the court in *Galemore* specifically addressed that issue. There, the trial court submitted an instruction that defined "scope and course of employment," but it did not mention that term in the verdict director, nor did it otherwise require the jury to actually find that the alleged employee had acted in the "scope and course of [his] employment." *Galemore,* 513 S.W.2d at 168. In reversing, the Eastern District of this court held:

> [T]his recognition of the issue by the giving of [the definitional] instruction ... did not constitute submission of it. For [the definitional] instruction ... did nothing more than define "scope and course of employment," a term not found in any other instruction, and thus was a meaningless exercise in futility. The issue as to whether or not [the alleged employee] was acting within the

scope and course of his employment ... should have been submitted in plaintiff's verdict-directing instruction in a manner compatible with that outlined in MAI 18.01, followed by MAI 13.05 defining "scope and course of employment" as that term is used "in these instructions." *Id.*

Thus, the inclusion of the definitional instruction in this case did not cure the error, nor does it rebut the presumption of prejudice. The jury was told what "scope and course of agency" means "when used in these instructions," but then the instructions never used those terms. Without including the defined terms in a verdict director, it was pointless to define them. That is, the jurors knew what "scope and course of agency" meant but they were not asked to do anything with that knowledge. Envirotrol was entitled to a factual finding on the agency issue, and the trial court prejudiced Envirotrol by not requiring the jury to make one. *See id.*

■■■ Next, Agri Process argues that the law was clear to the jurors because Envirotrol's lawyer "was allowed to explain the law during closing arguments, several times." We rejected a similar argument in *Rice,* 116 S.W.3d at 611, and we do so again now. Argument by counsel is no substitute for proper direction from the trial court. Irrespective of any comments made during closing arguments (which are by definition argumentative), the jurors are required to follow only the directions and instructions given to them by the court. Reasonable jurors could obviously reject statements made *by counsel* when those statements were not supported by the verdict director given to them *by the court.* Therefore, as we did in *Rice,* we hold that, "[w]hile [counsel's] closing argument ... would have been helpful to the jury in understanding the applicable rule of law concerning agency, it was not suffi-

cient . . . to allow the jury to render an informed verdict." *Id.*

The trial court erred in failing to include a modification to the verdict director based on MAI 18.01, and Agri Process has not rebutted the presumption of prejudice that applies to such errors. Accordingly, the trial court did not err in granting Envirotrol's motion for a new trial. Agri Process's point on appeal is denied.

## II. Envirotrol's Cross–Appeal

■ Envirotrol argues that the trial court erred in denying its motion for judgment notwithstanding the verdict in that Agri Process judicially admitted that the subject contract contained no promise from Envirotrol. We disagree.

■ Envirotrol is apparently arguing that no contract existed between it and Agri Process as a matter of law. For a contract to exist, there must be an offer, an acceptance, and consideration. *Walker v. Rogers*, 182 S.W.3d 761, 767 (Mo.App. W.D.2006). Envirotrol argues that no contract existed because Agri Process admitted that Envirotrol made "no promise." We take Envirotrol's "no promise" argument as an attempt to negate the "offer" element and/or the "acceptance" element of contract formation.

■ An offer is " 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.' " *Volker Court*, 130 S.W.3d at 611 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 26). Depending on the terms of the offer, an "acceptance" can be made by performance or by promise, but in either case "acceptance" is "a manifestation of assent to the terms [of the offer] in a manner invited or required by the offer." RESTATEMENT (SECOND) OF CONTRACTS § 50 (1981); *see also Walker*, 182 S.W.3d at 768. Although it is theoretically possible for a contract to be formed in the absence of a "promise" by one of the parties,[5] the subject contract allegedly involved negotiations between representatives of Agri Process and Hoover as the agent of Envirotrol, and negotiations imply an exchange of promises. We will therefore assume that Envirotrol could have negated the existence of a contract if it had proved that neither it nor its agents made a promise.

However, contrary to Envirotrol's argument, the trial court was not required to grant judgment notwithstanding the verdict on the basis of Agri Process's "judicial admission" that the subject contract contained no promise from Envirotrol. In response to a request for admission, Agri Process admitted that "[t]he contract upon which [its] claim is based contained no promise by Envirotrol" ("the response" or "the admission"). Envirotrol apparently believes that the effect of the response was to admit that no one—including Hoover— made a promise on Envirotrol's behalf. But the admission is not necessarily so broad. The admission could mean that Envirotrol itself—for example, by its officers or directors—made no promise but that Hoover—as Envirotrol's agent—did.

■ A party's response to a request for admission conclusively establishes a matter admitted unless the court permits withdrawal or amendment of the response. Rule 59.01(b). However, when the request or the response is fairly susceptible to more than one interpretation, the trial court may allow each party to argue its interpretation to the jury as op-

---

5. For example, Agri Process could have made Envirotrol an offer that invited acceptance by actual performance rather than by a promise of performance. *See* RESTATEMENT (SECOND) OF CONTRACTS § 50 (1981).

posed to giving conclusive effect to one of the interpretations. *See Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1210 (8th Cir.1995) ("The conclusive effect envisioned by the [federal] rule may not be appropriate where requests for admissions or the responses to them are subject to more than one interpretation."). Stated differently, the conclusive effect of Rule 59.01(b) only applies when the proposition sought to be established is clear and unambiguous. Moreover, "[t]rial courts have broad discretion in administering rules of discovery, which [an appellate court] will not disturb absent an abuse of discretion." *State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner*, 239 S.W.3d 608, 610 (Mo. banc 2007).

Here, in response to Envirotrol's argument on this point, the trial court stated:

I would say that [counsel for Agri Process] can probably explain that argument away in about 15 seconds. . . . That is a legal argument which has a different point of perspective that can be just as adequately expressed as yours, and I do not find that persuasive enough [to grant the motion for directed verdict].

The court then permitted Envirotrol to argue its interpretation of the response to the jury.

The trial court did not abuse its discretion in so ruling. As noted above, the request for admission is susceptible to more than one interpretation. It is true that, as a corporation, Envirotrol can only act through its agents, *see, e.g., Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 595 (Mo.App.1977); but there is at least a colorable argument that the request for admission refers to the officers and/or directors of Envirotrol as opposed to *all* agents of Envirotrol.

Moreover, when the response is read in the context of Agri Process's other pleadings and discovery responses, it is clear that Agri Process's position was that Hoover made promises on behalf of Envirotrol. Envirotrol cannot credibly claim that Agri Process's response caused confusion on this point, for the primary issue in the case was whether Hoover entered the contract as Envirotrol's agent. Under these circumstances, the trial court did not abuse its discretion in allowing Envirotrol to argue its interpretation of the response as opposed to giving that interpretation conclusive effect.

■ Although it did not include the argument in its point on appeal, Envirotrol also argues that Agri Process adduced insufficient evidence to prove the elements of a contract. This argument has not been preserved, *see* Rule 84.04(e), and, in any case, it is meritless. An agent invested with apparent authority has the power to bind the apparent principal to a contract. *Alexander*, 179 S.W.3d at 388. As explained above, it is undisputed that Hoover entered into the subject contract, and there was sufficient evidence that he acted with apparent authority sufficient to bind Envirotrol. Moreover, there was clearly evidence that consideration flowed to Hoover,[6] and the jury could have reasonably believed that he accepted it as Envirotrol's agent or that Envirotrol otherwise benefited from its agent's receipt of the money. Thus, there was sufficient evidence that Envirotrol was bound by the contract entered into by Hoover.

Since the trial court was not required to give conclusive effect to Envirotrol's interpretation of the response, and since there was sufficient evidence that Hoover acted

---

**6.** Payment was actually made to Thermal Corrosion Solutions, but, given that that entity was owned and operated by Hoover, a jury could reasonably have found that Hoover, and by extension his alleged principal Envirotrol, benefited from such payments.

with apparent authority sufficient to bind Envirotrol, we deny Envirotrol's point on cross-appeal.

## Conclusion

Both parties were entitled to a submission of the agency issue. Therefore, the trial court erred neither in granting the motion for a new trial nor in denying the motion for judgment notwithstanding the verdict. Accordingly, we affirm.

JOSEPH M. ELLIS, Judge, and VICTOR C. HOWARD, Judge, concur.